**Robert James ANDERSON, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 71808.**

Court of Criminal Appeals of Texas, En Banc.

Sept. 11, 1996.

Published in Part Pursuant to Tex. R. App. P. 90.

Rehearing Denied Oct. 30, 1996.

Warren L. Clark, Amarillo, for appellant.

Bruce P. Sadler, Asst. Dist. Atty., Amarillo, Matthew Paul, State's Atty., Austin, for State.

## OPINION

KELLER, Judge.

Appellant was convicted of murder during the course of aggravated sexual assault and aggravated kidnapping and sentenced to death. Appeal to this Court is automatic. Art. 37.071(h) [1]. Appellant presents twenty-six points of error. We will affirm.

### 1. *Pretrial Investigation*

On June 9, 1992, neighbors observed a man pushing a grocery cart with a styrofoam ice chest inside. Minutes later, one of the neighbors, Lewis Martin, found the ice chest in a dumpster and discovered that the ice chest contained the body of a five-year-old girl. Martin called the police, and officer Barry Carden was dispatched to look for the suspect. The initial description of the suspect was that of a white male, about thirty years of age, wearing a black shirt, dark jeans, tennis shoes, and an orange baseball cap.

Within ten minutes after receiving the dispatch, Carden approached appellant, who matched the description except for the shirt. Carden asked appellant for identification and a residential address, both of which appellant provided. Appellant asked why he had been stopped, and Carden replied that he was investigating an incident that occurred a few blocks away. Carden then asked appellant where he was going and where he had been. Appellant answered that he had pushed a grocery cart back to the Homeland store on nearby Western street. At this point, Carden asked appellant not to say anything else and further asked appellant if he would be willing to go back to the scene of that incident so that the witnesses could take a look at him. Appellant agreed to go, but Carden testified that he would have detained him for that purpose had he refused. Appellant sat in the back seat of the patrol car and was

---

1. All references to articles are to the Texas Code of Criminal Procedure unless otherwise specified.

driven to the witnesses' location. The witnesses identified appellant as the individual seen pushing the grocery cart containing a styrofoam ice chest. At that point, appellant was handcuffed, advised of his constitutional rights, and transported to the Special Crimes Unit.

Upon arrival at the Special Crimes Unit, physical samples were taken from appellant with his consent. He was also interrogated and gave both oral and written confessions. *Miranda* warnings were given and consent forms were signed prior to obtaining these statements. The police also obtained appellant's consent, a valid third party consent, and a warrant to search appellant's home. We will now address appellant's federal constitutional arguments concerning these events.[2]

█ In point of error twenty, appellant argues that the pretrial identifications were the fruits of an illegal arrest in violation of the Fourth Amendment of the United States Constitution. "A person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *California v. Hodari D.*, 499 U.S. 621, 627–628, 111 S.Ct. 1547, 1551, 113 L.Ed.2d 690 (1991). *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980) (opinion of Stewart, J.). The "reasonable person" standard presupposes an *innocent* person. *Florida v. Bostick*, 501 U.S. 429, 438, 111 S.Ct. 2382, 2388, 115 L.Ed.2d 389 (1991) (emphasis in original). Further, an officer's subjective intent to arrest is irrelevant unless that intent is communicated to the suspect. *Mendenhall*, 446 U.S. at 554 n. 6, 100 S.Ct. at 1877 n. 6. *See also Stansbury v. California*, 511 U.S. 318, ——, 114 S.Ct. 1526, 1530, 128 L.Ed.2d 293, 300 (1994) (uncommunicated belief that

person is a suspect irrelevant to Fifth Amendment custody determination; citing footnote 6 of *Mendenhall*).

We have held that a person who voluntarily accompanies investigating police officers to a certain location—knowing that he is a suspect—has not been "seized" for Fourth Amendment purposes. *Livingston v. State*, 739 S.W.2d 311, 327 (Tex.Crim.App.1987), *cert. denied*, 487 U.S. 1210, 108 S.Ct. 2858, 101 L.Ed.2d 895 (1988). We have also explained that:

> We are unaware of any rule of law which forbids lawfully constituted officers of the law from requesting persons to accompany them, or of providing transportation to the police station or some other relevant place in furtherance of an investigation of a crime. Nor are we aware of any rule of law that prohibits police officers from voluntarily taking a person to the police station or some other relevant place in an effort to exonerate such person from complicity in an alleged crime. Nor are we aware of any rule of law which forbids one to reject such a request. If the circumstances show that the transportee is acting only upon the invitation, request, or even urging of the police, and there are no threats, express or implied, that he will be taken forcibly, the accompaniment is voluntary, and such person is not in custody.

*Dancy v. State*, 728 S.W.2d 772, 778 (Tex. Crim.App.), *cert. denied*, 484 U.S. 975, 108 S.Ct. 485, 98 L.Ed.2d 484 (1987). *Shiflet v. State*, 732 S.W.2d 622, 628 (Tex.Crim.App. 1985).

█ Although Carden would have detained appellant if he had refused to return to the witnesses' location, Carden never communicated this intent. At most, this situation presents a suspect who voluntarily accompanies an officer at the officer's urging to exonerate the suspect of the crime. The only

---

**2.** In point of error twenty-one, appellant alleges that the pretrial identification was the fruit of an illegal arrest in violation of Texas constitutional and statutory provisions. In points of error twenty-two and twenty-three, Appellant alleges, in addition to his federal claims, that the refusal to suppress the pretrial identifications violated various Texas constitutional and statutory provisions. For each of these points, appellant does

not explain how the protection offered by the Texas Constitution or statutes differs from that of the United States Constitution. We decline to make appellant's arguments for him. *Johnson v. State*, 853 S.W.2d 527, 533 (Tex.Crim.App.1992), *cert. denied*, 510 U.S. 852, 114 S.Ct. 154, 126 L.Ed.2d 115 (1993). Point of error twenty-one and the state-law portions of points twenty-two and twenty-three are overruled.

possible objective indication of arrest status was Carden's request that appellant remain silent. We have held, though, that the mere recitation of *Miranda* warnings does not communicate an officer's intent to arrest. *Dancy,* 728 S.W.2d at 772. In the present case, the request to remain silent is even less extensive than the standard *Miranda* warnings. Because appellant was not "seized" prior to the witnesses' identifications, those identifications were not obtained in violation of the Fourth Amendment. Point of error twenty is overruled.

■ In points of error twenty-four and twenty-five, appellant complains about physical samples taken from his person, oral and written confessions, and evidence obtained from his residence. Appellant alleges that the evidence was obtained in violation of the Fourth, Fifth, Sixth, and Fourteenth Amendments of the United States Constitution, Article I of the Texas Constitution, and Article 38 of the Texas Code of Criminal Procedure. In these points of error, appellant claims only that these items of evidence were the fruit of an illegal arrest. Appellant cites cases relating to the Fourth Amendment and the Texas statutory (Art. 14) requirements for a warrantless arrest. We hold that claims respecting other constitutional or statutory provisions are waived because of inadequate briefing. Rule 74(f). *Garcia,* 887 S.W.2d at 871. *Johnson,* 853 S.W.2d at 533.

■ As explained with regard to point of error twenty, appellant was not under arrest until the officers formally arrested him after the witness identifications. Although arrests inside the home generally require a warrant, arrests outside the home pass muster under the federal Constitution so long as they are supported by probable cause. *New York v. Harris,* 495 U.S. 14, 110 S.Ct. 1640, 109 L.Ed.2d 13 (1990). Once appellant was positively identified by the witnesses, there existed probable cause to believe that he committed the crime, and the subsequent arrest was proper under the Fourth Amendment.

■ Texas law requires a warrant for any arrest unless one of the statutory exceptions is met. *Dejarnette v. State,* 732 S.W.2d

346, 349 (Tex.Crim.App.1987). Although appellant was arrested without a warrant, the police had probable cause to believe that a felony was committed and that appellant was about to escape in accordance with the exception found in Art. 14.04. Such probable cause exists when law enforcement officials identify the perpetrator while pursuing the fresh trail of a crime, and the identification is made in the perpetrator's presence under circumstances which convey to him the authorities' awareness of his involvement. *West v. State,* 720 S.W.2d 511, 517–518 (Tex.Crim.App.1986)(plurality opinion), *cert. denied,* 481 U.S. 1072, 107 S.Ct. 2470, 95 L.Ed.2d 878 (1987). In the present case, appellant's disposal of the victim's body resulted in pursuit and arrest within, at most, hours. The need to present appellant before witnesses while the incident was fresh in their memory was evident. At the same time, presenting appellant before these witnesses, and positive identification by them, informed appellant that the authorities had probable cause to arrest him. Hence, in conformance with Art. 14.04, there existed probable cause to believe appellant had committed murder and was about to escape.

Because the arrest was legal, the evidence obtained was not the fruit of an illegal arrest. Points of error twenty-four and twenty-five are overruled.

### 5. *Parole Instructions*

In points of error one and two, appellant complains about the trial court's refusal to submit a jury instruction stating that, were he given a life sentence, appellant would be ineligible for parole for a minimum of thirty-five calendar years. Appellant claims that the failure to submit such an instruction violates the cruel and unusual punishments prohibition of the Eighth Amendment and the due process clause of the Fourteenth Amendment. We have ruled adversely to appellant's position on both of these claims. *Smith v. State,* 898 S.W.2d 838 (Tex.Crim.App.1995)(plurality opinion), *cert. denied,* —— U.S. ——, 116 S.Ct. 131, 133 L.Ed.2d 80 (1995). *Broxton v. State,* 909 S.W.2d 912, 919 (Tex.Crim.App.1995).

During oral argument, appellant attempted to distinguish *Smith* (*Broxton* had not yet been decided) by arguing that the present case involved references to parole by the prosecutor during closing argument. For example, during closing argument (emphasis added):

PROSECUTOR: Don't give him the opportunity to hurt anybody else in society. Don't give him a chance to do anything like this to anybody and whether it be a check writer or a burglar in prison *or your children or my children if and when he gets out.*

DEFENSE: Your Honor, we object to that as a comment on the Board of Pardons and Paroles.

COURT: The jury's been instructed. Mr. Hill, you have two minutes left.

PROSECUTOR: Thank you, Your Honor. For whatever reason, for whatever reason that may be. Don't let that stay on—can you imagine what you would feel like later? We can talk about compassion for him but can you imagine how each of us would feel if we were ever in a position to find out that this scorpion did it again, whether it be in prison *or somewhere else?*

We agree that the emphasized portions are improper references to parole. *McKay v. State,* 707 S.W.2d 23, 38 (Tex.Crim.App. 1985), *cert. denied,* 479 U.S. 871, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986). Appellant argues, based upon footnote 22 in *Smith* that such argument requires the submission of his requested jury instruction.[3] We disagree.

An accused should not become entitled, because of argument error, to additional written jury instructions unless traditional remedies for argument error are constitutionally inadequate. Ordinarily, an objection to improper argument is required to preserve error. *Banda v. State,* 890 S.W.2d 42, 62 (Tex.Crim.App.1994). Even if an objection is lodged, appellant must pursue the objection until he receives an adverse ruling. *Flores v. State,* 871 S.W.2d

714, 722 (Tex.Crim.App.1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 313, 130 L.Ed.2d 276 (1994). The only exception to these principles occurs if an instruction to disregard would not have cured the harm. *Harris v. State,* 827 S.W.2d 949, 963 (Tex. Crim.App.1992), *cert. denied,* 506 U.S. 942, 113 S.Ct. 381, 121 L.Ed.2d 292 (1992). We believe that these traditional principles relating to argument error are constitutionally adequate in the present case because a mere reference to parole is cured by an instruction to disregard. *Coleman v. State,* 881 S.W.2d 344, 358 (Tex.Crim.App.1994). *Brown v. State,* 769 S.W.2d 565, 567 (Tex. Crim.App.1989). Footnote 22 of *Smith* is implicated only if the prosecutor conveys incomplete or inaccurate information about how parole is computed. In such a case, an instruction to disregard may not cure the error because the erroneous information has been conveyed, and truthful information may be required to counteract the prosecutor's statements. Such a remedy might be required, upon a defendant's request, as a less drastic remedy in lieu of a mistrial, to adequately protect a defendant's double jeopardy rights. In the present case, however, the prosecutor's statements did not convey any information about how parole might be calculated; so, the reference to parole could have been cured by an instruction to disregard. If appellant wished to preserve error with regard to the prosecutor's reference to parole during argument, appellant should have objected and received an adverse ruling, or if his objection were sustained, he should have requested an instruction to disregard. Appellant was not entitled to an instruction on the operation of parole laws. Points of error one and two are overruled.

In point of error three, appellant contends that the trial court's written instruction concerning parole violated Article IV § 11 of the Texas Constitution. The trial court instructed the jury that: "During your deliberations

---

**3.** Footnote 22 of *Smith* provides in relevant part: We also recognize that were a prosecutor, in his or her arguments concerning the new special issue, to urge the jury not to give a defendant a life sentence because he would serve a limited number of years in prison, then *Simmons* [*v. South Carolina,* 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994)] may command that the jury be informed of the minimum prison terms for capital life prisoners.

you will not consider any possible action of the Board of Pardons and Paroles or the Governor." Appellant did not object to including this instruction. Nevertheless, we have previously upheld this kind of instruction as an appropriate measure to prevent the consideration of parole laws. *Williams v. State*, 668 S.W.2d 692, 701 (Tex.Crim.App. 1983), *cert. denied*, 466 U.S. 954, 104 S.Ct. 2161, 80 L.Ed.2d 545 (1984). Point of error three is overruled.

### 7. "Penry" Issue

■ In point of error ten, appellant contends that the statutory *"Penry"* issue is facially unconstitutional under the Eighth Amendment because it does not assign a burden of proof. He specifically contends that the issue's silence concerning the burden of proof renders the capital punishment scheme "unstructured" in violation of *Furman*. We have already held that the Eighth Amendment does not require that the State be assigned the burden of proof on *Penry* issues. *Barnes v. State*, 876 S.W.2d 316, 330 (Tex.Crim.App.), *cert. denied*, —— U.S. ——, 115 S.Ct. 174, 130 L.Ed.2d 110 (1994). Because the Eighth Amendment does not require limitations on a jury's discretion to consider mitigating evidence, *see McFarland*, 928 S.W.2d 482, 520–521 (Tex.Cr.App.1996) the Constitution does not require a burden of proof to be placed upon anyone. Point of error ten is overruled.

In point of error nine, appellant asserts that the Due Process Clause of the Fourteenth Amendment of the federal Constitution requires that we conduct a comparative proportionality review of the death worthiness of each defendant sentenced to death, ensuring that the sentence is not disproportionate when compared to other death sentences. Appellant concedes that the United States Supreme Court rejected similar arguments in *Pulley v. Harris*, 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984), but asserts his arguments are novel because they are raised under the Due Process Clause of the Fourteenth Amendment, instead of under the Eighth Amendment, and because of the impact of the recent holding of *Honda Motor*

*Company, Ltd. v. Oberg*, 512 U.S. 415, 114 S.Ct. 2331, 129 L.Ed.2d 336 (1994).

According to appellant, *Honda* suggests that the Due Process Clause requires a comparative proportionality review of all judgments. Appellant asserts that "if such appellate review is required by the Due Process Clause in civil cases, it is required *a fortiori* in death penalty cases." We disagree.

*Honda* dealt with civil procedures, which by their nature operate under vastly different due process principles than do criminal cases in general and capital punishment cases in particular. *See e.g. In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (due process requirements in criminal proceedings) and *Gardner v. Florida*, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977)(death is different). *Honda* does not stand for the proposition that due process requires comparative proportionality reviews of all civil judgments, much less, all criminal judgments; at most it stands for the proposition that due process requires some minimal safeguard ensuring that individual judgments are not excessive or disproportionate. *Honda* leaves open the form these safeguards might take. *Honda* held that a comparative proportionality review was required only because Oregon had no alternative means of safeguarding against excessive or disproportionate judgments. 512 U.S. 415, ———— ——, 114 S.Ct. 2331, 2340–2341, 129 L.Ed.2d 336, 349–350.

■ The federal Constitution requires more than the minimal safeguard of a comparative proportionality review to ensure the fair imposition of the death penalty. Because death is qualitatively different from any other punishment, the federal Constitution requires the highest degree of reliability in the determination that it is the appropriate punishment. *E.g.*, *Woodson v. North Carolina*, 428 U.S. 280, 305, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976); *Jurek*, 428 U.S. at 276, 96 S.Ct. at 2958; *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) (decided in conjunction with *Branch v. Texas* ). To ensure this reliability, the United States Constitution imposes requirements of proportionality of offense to punishment, of a narrowly defined class of death eligible

defendants, and of an opportunity for each juror to consider and give effect to circumstances mitigating against the imposition of the death sentence. *See Tuilaepa v. California,* 512 U.S. 967, 114 S.Ct. 2630, 129 L.Ed.2d 750 (1994). In short, the due process principles governing the imposition of a sentence of death are distinct and more onerous than those governing the imposition of a civil judgment. *Compare Tuilaepa to Honda.*

It is for good reason, therefore, that the United States Supreme Court has not held that due process requires a comparative proportionality review of the sentence of death, but instead has held that such a review would be "constitutionally superfluous." *Pulley,* 465 U.S. at 49, 104 S.Ct. at 879. *See also Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976)(upholding our capital punishment scheme even without a comparative proportionality review). Appellant's ninth point of error is overruled.

### 8. *Constitutionality of Death Penalty*

■ In points of error twelve and thirteen, appellant argues that the death penalty, as presently administered, is cruel and unusual under both the federal and Texas constitutions. In points of error fourteen and fifteen, he argues that the death penalty has been arbitrarily imposed due to the many different schemes that have existed since 1989.

The facial validity of the Texas scheme under the United States Constitution has been upheld and we have reaffirmed that holding. *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976), *affirming sub nom., Jurek v. State,* 522 S.W.2d 934 (Tex.Crim.App.1975). *Muniz v. State,* 851 S.W.2d 238, 257 (Tex.Crim.App.), *cert. denied,* 510 U.S. 837, 114 S.Ct. 116, 126 L.Ed.2d 82 (1993). *See also Green v. State,* 912 S.W.2d 189, 196–198 (Tex.Crim.App. 1995)(Baird, J. concurring). We reject appellant's contention that mere changes in the law render the capital punishment scheme unconstitutional. It is generally within the legislature's province to change its laws as it sees fit, and the mere fact that a certain area of the law changes frequently does not in itself show a constitutional violation. Moreover, we recognize that the legislature's changes in the capital punishment scheme have in large part been in response to decisions by this Court and the United States Supreme Court. Such responses are entirely appropriate.

Appellant argues that the Texas constitutional provision is broader than the Eighth Amendment because the Texas Constitution proscribes "cruel *or* unusual punishments," TEX. CONST. ART. I § 13, instead of "cruel *and* unusual punishments" as proscribed in the federal Constitution. He points out that the word "and" in the 1845 version of the Texas Constitution was changed to "or" in the 1876 version. He also relies upon the California case of *People v. Anderson,* 6 Cal.3d 628, 100 Cal.Rptr. 152, 154–158, 493 P.2d 880, 883–887 (1972) for the proposition that the difference in wording indicates that the state constitutional provision is broader than its federal counterpart.

■ We do not decide whether the state constitutional provision is broader than its counterpart. Assuming that the word "or" requires a disjunctive reading of the words "cruel" and "unusual," we find that the death penalty is neither. The Texas scheme punishes only certain aggravated categories of murder which society finds especially reprehensible. *See* Texas Penal Code § 19.03. Further, only criminals who pose a continuing threat to society can be given the death penalty. Art. 37.071 § 2(b)(1). Finally, the death penalty requires that a mere party to a crime have some degree of personal culpability for the death. Art. 37.071 § 2(b)(2) (may only be assessed against the trigger person or against a non-trigger person who intended to kill or anticipated that a human life would be taken). Art. 37.0711 § 3(b)(1) ("deliberateness" requirement). We conclude that the death penalty is not "cruel." *See discussion in Gregg v. Georgia,* 428 U.S. 153, 178–187, 96 S.Ct. 2909, 2927–2932, 49 L.Ed.2d 859 (1976).

We also find that the death penalty is not "unusual." This Court has never in its history held the death penalty to constitute cruel and unusual punishment under the Texas

Constitution. *Brock v. State*, 556 S.W.2d 309, 311 (Tex.Crim.App.1977), *cert. denied*, 434 U.S. 1051, 98 S.Ct. 904, 54 L.Ed.2d 805 (1978). *Livingston v. State*, 542 S.W.2d 655, 662 (Tex.Crim.App.1976), *cert. denied*, 431 U.S. 933, 97 S.Ct. 2642, 53 L.Ed.2d 250 (1977). Points of error twelve through fifteen are overruled.

The judgment of the trial court is AF-FIRMED.

CLINTON, J., concurs in the result.

BAIRD, J., concurring.

I concur in the resolution of points of error twenty, twenty-four and twenty-five for the reasons stated in *Francis v. State*, 922 S.W.2d 176, 177 (Tex.Cr.App.1996)(Baird, J., concurring and dissenting). However, I disagree with the majority's treatment of point of error six for the reasons stated in *Morris v. State*, —— S.W.2d —— (Tex.Cr.App. No. 71,799, 1996 WL 514833, delivered this day)(Baird, J., dissenting). Accordingly, I join only the judgment of the Court.

OVERSTREET, Judge, dissenting.

I dissent to the majority's disposition of appellant's points of error one and two where he complains of the trial court's refusal to inform the jury that if sentenced to life he was statutorily required to serve 35 years in prison before becoming eligible to be considered for parole. I believe the failure to adequately inform the sentencing jury *may* be a due process violation and *may* cause the Texas death penalty statute to be unconstitutional as applied.

Additionally, I add that this Court through actual knowledge is well aware that some Texas trial courts do in fact inform some sentencing juries as to what a capital life sentence means. *See, e.g., Ford v. State*, 919 S.W.2d 107, 116 (Tex.Cr.App.1996); and *McDuff v. State*, No. 71,872 (Tex.Cr.App., currently pending). This Court has never said that such practice is forbidden, and in fact has noted that there is no express constitutional or statutory prohibition against including such an instruction. *Walbey v. State*, 926 S.W.2d 307, 313 (Tex.Cr.App.1996).

Some juries who are informed of the parole eligibility law do indeed answer the special issues and return verdicts which result in a death sentence. *See, e.g., Ford, supra, McDuff, supra,* and *Walbey, supra.* Other juries which are kept in the dark and not informed about such have returned verdicts which result in a life sentence. *See, e.g., Weatherred v. State*, 833 S.W.2d 341 (Tex. App.—Beaumont 1992, pet. ref'd); *Cisneros v. State*, 915 S.W.2d 217 (Tex.App.—Corpus Christi 1996, pet. pending); *Norton v. State*, 930 S.W.2d 101 (Tex.App.—Amarillo 1996, pet. ref'd). Others which have been informed of the parole eligibility law have returned verdicts which result in a life sentence. *See, e.g., Johnson v. State*, No. 13–93–504–CR (Tex.App.—Corpus Christi, delivered February 29, 1996), *pet. summarily granted and remanded, Johnson v. State*, No. 684–96 (Tex.Cr.App. delivered ——————, 1996); *Koslow v. State*, No. 02–94–385–CR (Tex.App.—Fort Worth, currently pending). And in a myriad of cases in which jurors have been kept in the dark about parole eligibility juries have returned verdicts which result in a sentence of death. *See, e.g., Smith v. State*, 898 S.W.2d 838 (Tex.Cr.App.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 131, 133 L.Ed.2d 80 (1995); *Willingham v. State*, 897 S.W.2d 351 (Tex.Cr. App.1995); *cert. denied*, —— U.S. ——, 116 S.Ct. 385, 133 L.Ed.2d 307 (1995); *Broxton v. State*, 909 S.W.2d 912 (Tex.Cr.App.1995); *Rhoades, supra; Martinez v. State*, 924 S.W.2d 693 (Tex.Cr.App.1996); *Sonnier v. State*, 913 S.W.2d 511 (Tex.Cr.App.1995).

Consequently the "luck of the draw" determines whether a defendant's sentencing jury in a capital murder prosecution will be adequately truthfully fully informed or have vital information withheld. Such practice in my opinion gives rise to questions of equal protection of the law under both the Federal and Texas Constitutions, especially when, as shown above, some juries which have been informed as to the proper legal definition of a capital murder life sentence have answered the special issues in a way that mandates life while other juries which have not been so informed have answered the special issues in a way that mandates death.

For these reasons I urge this Court to allow the capital sentencing jury to have the

truth, the whole truth, and nothing but the truth. I truly believe in the trial by jury system and that if capital sentencing juries are given the complete truth regarding the issue of future dangerousness they will make appropriate and fair decisions; at the very least, they ought to be given the opportunity to do so. Because the majority continues to sanction the practice of hiding the truth in sentencing from citizens, who are asked to decide life and death, I voice my strongest dissent.