**Kendall Keith SANDER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 09–00–385 CR, 09–00–386 CR.**

Court of Appeals of Texas,
Beaumont.

Submitted May 29, 2001.

Decided Aug. 29, 2001.

Russell J. Wright, Silsbee, for appellant.

Joe R. Smith, Criminal District Attorney, Woodville, for state.

Before WALKER, C.J., BURGESS, and GAULTNEY, JJ.

## OPINION

GAULTNEY, Justice.

Appellant Kendall Keith Sander was found guilty of two counts of aggravated sexual assault of a child, his adopted son. He was sentenced to seventy-five years in prison and fined $5,000 for each offense. Sander raises six issues on appeal. Sander asserts, principally, that the trial court erred in admitting his verbal and written

confessions; these are issues one, two, and three.

Issue four complains the trial court failed to enter requisite findings of fact; issue five is a challenge to the legal sufficiency of the evidence; and issue six contends the written warnings were insufficient.

## CUSTODY DEFINED

Sander filed a pretrial motion to suppress his statements and the trial court held a *Jackson v. Denno*[1] hearing after which it denied the motion. Sander's first three issues all rest on the assertion he was in custody at the time he confessed. If he was not, these issues have no merit.

■ In *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court held that law enforcement officers must inform a suspect in custody that his statements may be used against him, that he has the right to an attorney during the interrogation, and that if he cannot afford an attorney, one will be appointed to represent him. Otherwise, any statements obtained from the defendant during the custodial interrogation are inadmissible at trial. *Id.* 384 U.S. at 492, 86 S.Ct. 1602. Similarly, Texas law requires that the defendant be warned of his rights before a custodial interrogation if the resulting confession is to be admissible at trial. TEX.CODE CRIM. PROC. ANN. art. 38.22 (Vernon 1979 & Supp.2001). Before either warning requirement is triggered, however, the individual confessing must actually be in custody. *Illinois v. Perkins*, 496 U.S. 292, 296, 110 S.Ct. 2394, 110 L.Ed.2d 243 (1990). *See Dowthitt v. State*, 931 S.W.2d 244 (Tex.Crim.App.1996). The determination of whether the defendant was in custody at the time of the confession depends on the objective circum-stances of the interrogation. *Stansbury v. California*, 511 U.S. 318, 322, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994).

■ So was Sander "in custody"? Essentially, the "inquiry is simply whether there [was] a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *Stansbury*, 511 U.S. at 322, 114 S.Ct. 1526 (quoting *California v. Beheler*, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983)); *see also Nenno v. State*, 970 S.W.2d 549, 556 (Tex.Crim.App.1998) *overruled in part on other grounds by State v. Terrazas*, 4 S.W.3d 720, 727 (Tex.Crim.App.1999).

■ As in *Dowthitt*, Sander makes both state and federal constitutional challenges to the admissibility of his statements, but does not argue that the concept of custody differs under the two constitutions. The Court of Criminal Appeals has held that the protections against self-incrimination provided by Article I, Section 19 of the Texas Constitution are identical to those provided by the Fifth Amendment. TEX. CONST. art. I, § 19. "[W]e will analyze the [custody] issue from a federal constitutional perspective and presume that the state law standard is the same." *Dowthitt*, 931 S.W.2d at 254 n. 4. In *Lagrone v. State*, 942 S.W.2d 602, 612 (Tex.Crim.App.1997), the Court of Criminal Appeals addressed the challenges under the state and federal constitutions with the following explanation:

> [W]e find no violation of the defendant's Fifth Amendment rights. We also note that appellant has failed to provide us with any distinction or reason that the Texas Constitution provides greater protection than the Fifth Amendment.

As we have noted, here too appellant makes no distinction between the stan-

---

**1.** *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

dards appropriate under the federal and state constitutions.

### SANDER'S INTERVIEW

With these standards in mind, we consider the objective circumstances of the Sander's interview. The Federal Bureau of Investigation ("FBI") was told by an informant that Sander was involved in internet child pornography, and obtained a search warrant for his house in Woodville, Texas. Agents were told that Sander "had adopted a young male, 10–11 years, . . . for the purpose of sexually abusing the child." This information was included in the affidavit the FBI filed requesting the search warrant.

The FBI agent contacted Sander at the local school where Sander was a teacher. He asked Sander if he would accompany the Special Agent and an investigator from the Tyler County District Attorney's Office to the District Attorney's office for questioning. According to the FBI agent and the investigator, Sander agreed to go voluntarily. He was told he was not under arrest. On the way to the District Attorney's office, the FBI agent asked Sander for his house keys so the search warrant for his home could be executed without breaking into the house. Sander handed over his key ring, which contained both his house and car keys, and told them they could also search his office and car.

According to the State's witnesses at the suppression hearing, their interview of Sander was noncustodial and low key. The interview initially focused on the alleged internet exchanges of child pornography which had attracted the FBI's attention. Appellant was not handcuffed or restrained in any way. He was informed, several times, that he was not under arrest and could leave. He was allowed to visit the restroom without accompaniment; the restroom was close to the exit door. He was allowed to telephone his mother, stepfather and pastor and consult with them privately. When Sander asked if he should consult an attorney he was told that was his decision. His mother advised him to get an attorney but he did not.

■ At the suppression hearing, Sander's mother disputed the State's version of the interview. She stated that her private visit with her son was cut short, and that Sander was "visibly upset" and crying when she spoke to him. She also testified that when she asked an investigator, out of Sander's hearing, whether she could "take him home," she was told "No ma'am, not at this time, you cannot." However, it is undisputed that he was allowed to leave with her later.[2]

### SANDER WAS WARNED

The focus of the interview changed when a second FBI agent and an assistant U.S. Attorney arrived. While the first part of the Sander's interview was being conducted by the first FBI agent, the second FBI agent interviewed the child victim and the child described the offenses for which Sander was convicted in this case. The second FBI agent subsequently confronted Sander with the child's allegations when the second FBI agent arrived at the D.A.'s office. Sander then admitted several sexual assaults on the child, and agreed to make a written statement. The form was entitled "Voluntary Statement–Not Under Arrest." The statement was signed by Sander and notarized. The form contained several written warnings at the top of the page. Sander read and initialed each warning, even correcting a minor typographical error. The warnings he read

---

2. It should be noted here that the relevant issue of fact is whether Sander was told he was free to go, not what his mother may have been told out of his hearing.

before providing his written confession are as follows:

1. I have the right to remain silent and not say anything and that any statement I make may be used against me at my trial.
2. Any oral or written statement I make may be used against me in court.
3. I have the right to have my Lawyer present to advise me before and during any questioning by Peace Officers or Attorneys representing the State.
4. If I am to [sic][3] poor to hire an Attorney, then the Court will appoint an Attorney for me free of charge, and he can advise me before and during any questioning.
5. I can decide to talk with anyone and I can stop talking to them any time I want.
6. The above rights are continuing rights which can be urged by me at any stage of the proceedings.
7. I am making this statement knowingly, intelligently and voluntarily.

The entire interview, on both the federal and the state issues, lasted from approximately 2:30 p.m. to 7:00 p.m., at which time Sander left voluntarily with his mother and step-father. At 9:30 p.m. an adoption case-worker whom Sander had tried to contact earlier returned his call, and he repeated his confession to her.[4] The oral confession, the written confession, and the confession to the case-worker were all admitted into evidence. Sander essentially claims that he was under arrest when he confessed and that the oral and written confessions to the officers should not have been admitted into evidence.

## THE STANDARD OF REVIEW

In a motion to suppress hearing, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony; the trial court observes first hand the demeanor and appearance of witnesses. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim.App.2000). The determinations of whether a statement is custodial and voluntary are mixed questions of law and fact. *Garcia v. State*, 15 S.W.3d 533, 535 (Tex. Crim.App.2000). Appellate courts should afford great deference to the trial court's rulings on mixed questions of law and fact if the resolution of those issues turns on the trial court's evaluation of credibility and demeanor. *Id.* Following the holding of the United States Supreme Court in *Stansbury*, 511 U.S. at 322, 114 S.Ct. 1526, the Court of Criminal Appeals has held that a person is in custody only if, under the circumstances, a reasonable, innocent person would believe that his or her freedom of movement was restrained to the degree associated with a formal arrest. *See Dowthitt*, 931 S.W.2d at 254.

## THE TRIAL COURT'S FINDINGS

We abated this appeal in order for the trial court to enter written findings of fact and conclusions of law in compliance with TEX.CODE CRIM. PROC. ANN. art. 38.22 § 6 (Vernon 1979). The trial court entered the following findings:

## FINDINGS OF FACT

The Defendant gave an oral statement to Agent Townsend and U.S. Attorney, Brit Featherston. The Defendant then gave a written statement to Investigator Gerry Mattingly of the Tyler County

---

3. This is a typographical error Sander corrected on the form.

4. Sander does not challenge the admissibility of his confession to the case-worker.

District Attorney's Office. The oral and written statements were made on December 11, 1998. The Defendant was, at no time, in custody when these statements were given. He voluntarily came to the Tyler County Criminal District Attorney's Office and gave the statements and after giving the oral statement and written statement he left with his parents and returned home. He was advised of his rights under *Miranda v. Arizona*, 384 U.S. 436[, 86 S.Ct. 1602, 16 L.Ed.2d 694] and the Tex.Code Crim. Proc. Ann. Art. 15.17 by Investigator Mattingly. The oral and written statements were not coerced.

## CONCLUSIONS OF LAW

The Court finds beyond a reasonable doubt with relation to the admissibility in evidence of the oral and written statements of the Defendant, the following:

- Both the oral and written statements given by the Defendant, Kendall Keith Sander, were freely and voluntarily given;
- That the statements were non-custodial in nature;
- That the statements are admissible as evidence.

## OUR REVIEW

 The interview was clearly non-custodial when it began. A person who voluntarily accompanies investigating police officers to a certain location has not been arrested. "If the circumstances show that the transportee is acting only upon the invitation, request, or even urging of the police, and there are no threats, express or implied, that he will be taken forcibly, the accompaniment is voluntary, and such a person is not in custody." *Anderson v. State*, 932 S.W.2d 502, 505 (Tex.Crim.App.1996) (quoting *Dancy v. State*, 728 S.W.2d 772, 778 (Tex.Crim.App.

1987)). In *Dowthitt*, however, the Court of Criminal Appeals held that a noncustodial interview can, under certain circumstances, be transformed into a custodial interrogation. *Dowthitt*, 931 S.W.2d at 256–257. We look to *Dowthitt* for guidance as to whether those circumstances are present here. In *Dowthitt*, the court set out the following four general situations we consider in reviewing the findings of the trial court and deciding whether the interrogation of Sander changed from a noncustodial to a custodial interview:

We have outlined at least four general situations which may constitute custody: (1) when the suspect is physically deprived of his freedom of action in any significant way, (2) when a law enforcement officer tells the suspect that he cannot leave, (3) when law enforcement officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted, and (4) when there is probable cause to arrest and law enforcement officers do not tell the suspect that he is free to leave. Concerning the first through third situations, *Stansbury* indicates that the restriction upon freedom of movement must amount to the degree associated with an arrest as opposed to an investigative detention. Concerning the fourth situation, *Stansbury* dictates that the officers' knowledge of probable cause be manifested to the suspect. Such manifestation could occur if information substantiating probable cause is related by the officers to the suspect or by the suspect to the officers. Moreover, given our emphasis on probable cause as a "factor" in other cases, situation four does not automatically establish custody; rather, custody is established if the manifestation of probable cause, combined with other circumstances, would lead a reasonable

person to believe that he is under restraint to the degree associated with an arrest.

*Dowthitt,* 931 S.W.2d at 255 (citation omitted).

■ Situations one and three are not pertinent here; investigators allowed Sander to move around freely, to walk unescorted to the bathroom in the building's foyer and to call his parents and pastor and speak to them privately. Situation two is not present; Sander was assured on several occasions that he was not under arrest and was free to leave.

The fourth situation, central to *Dowthitt*'s holding, is not applicable; Sander was told he was free to leave on at least one occasion when agents confronted him with the child's accusations. The second FBI agent arrived at the D.A.'s office between 5:30 and 6:00. He and the assistant U.S. Attorney talked with Sander. Sander was not read his *Miranda* warnings at that time. The assistant U.S. Attorney did advise Sander he was free to leave. The attorney testified as follows:

> I told him—I said: Look, you're not under arrest. You're free to leave at any time. And the context of the conversation was such that I didn't feel like he felt like he was being detained against his will because it was—it was a nice—in the world of interrogations, this was a nice conversation. It was—everybody involved, that I could tell, were very polite and nice, including Mr. Sander himself.

After being confronted with the victim's statement and being told he was free to leave, Sander initially did not confirm or deny the allegations. When he did confess, he was asked to put it in writing and he did so. As we have noted, the written form he signed contained the written statement that he was not under arrest and that his statement was voluntary.

These circumstances are significantly different from those which caused the *Dowthitt* court to hold that the interrogation there became custodial. Here, Sander was informed he could leave before and after he confessed, and when he was confronted with the victim's statement. Dowthitt was escorted during his restroom breaks; Sander was not, although the men's room was in the foyer of the building and near the exit. Dowthitt was refused permission to speak to his wife, despite repeated requests; Sander was allowed to call friends and family members, and to talk to them privately in person. Dowthitt was jailed after making his written statement; Sander went home without charges. Even when Sander was confronted with circumstances tending to establish probable cause—the victim's statement—he was informed he was not under arrest. We find no error in the trial court's holding that Sander's statements were both noncustodial and voluntary, and no error in the trial court's admission of his confessions into evidence. Points of error one, two and three are overruled.

### POINT OF ERROR FOUR IS MOOT

■ In point of error four, appellant urges that the trial court erred in not entering an independent finding in the record that the confessions were made under voluntary circumstances, citing TEX.CODE CRIM. PROC. ANN. art. 38.22 § 6 (Vernon 1979). Those findings are required whenever a question is raised as to the voluntariness of a statement. *Terrazas,* 4 S.W.3d at 727. We abated this appeal to permit the trial court to make written findings of fact and conclusions of law; those findings and conclusions are cited above and are affirmed. Point of error four is now moot.

### THE CRIMES OCCURRED IN TYLER COUNTY

■ In point of error five, Sander claims that there was legally insufficient

evidence that he committed the offenses in Tyler County, where he was indicted and convicted. A plea of "not guilty" puts in issue the allegations of venue in the indictment, and the State must prove the venue allegations or a conviction will not be warranted. *Black v. State*, 645 S.W.2d 789, 790 (Tex.Crim.App.1983). According to the Texas Rules of Appellate Procedure, courts of appeal must presume that venue was proven in the trial court unless it was disputed during the trial. TEX.R.APP. P. 44.2(c)(1). Here, Sander moved for a directed verdict of acquittal on grounds that venue remained unproven, which rebuts the presumption.

■■■■■ An examination of the trial record shows that the State did not ask any of its witnesses directly whether the offenses at issue in this case took place in Tyler County. However, it has long been held that an appellate court can take judicial notice that a given town is a county seat, and that judicial notice can serve as proof that venue lies in that county for crimes alleged in that town. *Black*, 645 S.W.2d at 791 (citing *Moore v. State*, 151 Tex.Crim. 542, 209 S.W.2d 192, 194 (Tex. Crim.App.1948)). Sander's handwritten confession, which was admitted into evidence, gives his address as "1100 Barclay Terrace, Woodville, TX." The confession states that the criminal acts took place in Sander's bedroom, as does the testimony of the victim. We take judicial notice that Woodville is the county seat of Tyler County and hold venue was proven in Tyler County. Point of error five is overruled.

### THE FORM OF THE WRITTEN WARNINGS

■■ In point of error six, appellant again asserts that the written confession should not have been admitted, citing TEX. CODE CRIM. PROC. ANN. art. 38.22 § 2 (Vernon 1979) and the Court of Criminal Appeals decision in *Garcia v. State*, 919 S.W.2d 370 (Tex.Crim.App.1994). We hold that the warnings on the written form were sufficient for a custodial interrogation, though the warnings were not required because this was not a custodial interrogation. Our holding is supported by, not in conflict with, the Court of Criminal Appeals' decision in *Garcia*. There the Court held that a similar written form initialed by defendant reinforced the inescapable conclusion that defendant knew his rights under article 38.22, section 2 and waived them knowingly, intelligently and voluntarily, as required by subsection 2(b). *Garcia*, 919 S.W.2d at 386.

We overrule point of error six.

### CONCLUSION

We hold that the confessions occurred during a noncustodial interview, that the confessions were voluntarily given, that there was sufficient proof the offenses occurred in Tyler County, and that the warnings given defendant were sufficient even for a custodial interrogation. Having overruled all of appellant's points of error, we affirm.

AFFIRMED.

BURGESS, J., concurring.

I concur with the affirmance. I write only to take issue with the majority's holding concerning Sander's oral confession. When those statements were made, the authorities were aware of Sander's sexual assault on the child and confronted him with those facts. While some of the "restraint" factors of *Dowthitt v. State*, 931 S.W.2d 244 (Tex.Crim.App.1996), are different here, the probable cause and "focus of the investigation" factors were even more prevalent. *See also Ruth v. State*, 645 S.W.2d 432, 436 (Tex.Crim.App.1979). Sander's oral and written confessions were, in my view, custodial. Therefore,

the admission of the oral statement was error, albeit, harmless error in view of the written statement and Sander's admission to the adoption case worker.[1]

---

1. One wonders why the State would urge the admissibility of a legally questionable oral confession when they have an absolutely le-gally admissible written statement, plus a le-gally admissible oral admission to the case worker.