COURT OF
APPEALS

                                                    EIGHTH DISTRICT
OF TEXAS

                                                               EL
PASO, TEXAS

 

ISAAC C. PANDO,                                             )

                                                                              )              
No.  08-01-00330-CR

Appellant,                          )

                                                                              )                    Appeal from the

v.                                                                           )

                                                                              )                
394th District Court

THE STATE OF TEXAS,                                     )

                                                                              )            
of Presidio County, Texas

Appellee.                           )

                                                                              )                       (TC# 2805)

                                                                              )

 

 

O
P I N I O N

 

Appellant, Isaac
Pando, appeals his conviction for burglary of a habitation and sentence of
2 years=
confinement, probated.  Appellant raises
twelve issues for review by this Court. 
All issues are related to the application of Texas Code of Criminal
Procedure Article 38.22 to his case. 
Essentially Appellant argues the State failed to comply with the
requirements of Article 38.22 at the time he gave a statement to law
enforcement.  We affirm.








On the evening of
December 21, 1999, the Presidio County Sheriff=s
Office received a burglary report. 
Deputy Margarito Hernandez was sent to investigate.  The deputy discovered shoeprints at the
burglary scene and followed the prints to the nearby home of Juan Aguilar,
Jr.  Deputy Hernandez questioned Mr.
Aguilar, who told him three other people had been involved in the burglary,
including someone nicknamed AD.@ 
Deputy Hernandez then called for assistance and Deputy Marco Baeza
responded.  The two officers took a
statement from Mr. Aguilar, who then showed them where the others lived.  The officers went to the home of Isaac Pando,
who had earlier been identified as AD.@ 
They arrived at Appellant=s
house just after 2 a.m. on December 22. 
They told Appellant they wanted to ask him some questions in reference
to a burglary and asked him if he would go with them to the County Annex.  Appellant was aware he was a suspect in the
burglary, and he agreed to go with the officers at that time.[1]








After Deputies
Hernandez and Baeza arrived at the annex with Appellant, they took him into an
interview room in the Sheriff=s
Office.  Deputy Baeza sat across from
Appellant and Deputy Hernandez stood six to eight feet away during the
discussion.  Before asking any questions
or taking a statement from Appellant, Deputy Baeza read him his rights.  Appellant signed a form listing the rights
and warnings of which he had been advised. 
The form listed the time and date and was witnessed by both
deputies.  Appellant then gave an oral
statement of his involvement with the burglary. 
As he spoke, Deputy Baeza took notes and then transcribed the notes onto
a form entitled Voluntary Statement. 
The statement was then read aloud to Appellant and given to him to
review.  Appellant initialed the
beginning and end of the written account and signed the bottom of the
form.  In addition to the statement
itself, the document includes the time the interview began and ended,
acknowledges and waives certain rights, and attests to the truthfulness of the
contents.  As noted on the form, the
statement was completed at 3:15 a.m. 
After the statement was given, Appellant was placed under arrest,
handcuffed, and taken to a detention facility. 


Prior to trial,
the defense filed a motion to suppress the voluntary statement.  A hearing was held and the court denied the
motion.  The court found Appellant=s statement was given freely and
voluntarily and was not a result of coercion or duress.  The court=s
written order on the motion includes a finding that Appellant was not in
custody when the statement was given and that the provisions of Article 38.22
do not apply in this case.

ISSUES
ON APPEAL

Appellant now
brings twelve issues before this Court for consideration.[2]  At the heart of all of the issues is
Appellant=s
contention that the Presidio County Sheriff=s
Office failed to comply with Article 38.22 when his statement was taken.  Because of this failure, Appellant argues the
trial court erred in denying his pretrial motion to suppress.








A trial court has
broad discretion in determining the admissibility of evidence.  Allridge v. State, 850 S.W.2d 471, 492
(Tex.Crim.App. 1991), cert. denied, 510 U.S. 831, 114 S.Ct. 101, 126
L.Ed.2d 68 (1993); State v. Consaul, 960 S.W.2d 680, 685 (Tex.App.--El
Paso 1997), pet. dism=d,
improvidently granted, 982 S.W.2d 899 (Tex.Crim.App. 1998).  As such, an appellate court will not reverse
such determinations absent a clear abuse of discretion.  Allridge, 850 S.W.2d at 492; Consaul,
960 S.W.2d at 685.  On a motion to
suppress evidence, the trial judge is the sole and exclusive trier of fact and
arbiter of the credibility of witnesses, including the weight to be given their
testimony.  Romero v. State, 800
S.W.2d 539, 543 (Tex.Crim.App. 1990); Laca v. State, 893 S.W.2d 171, 177
(Tex.App.--El Paso 1995, pet. ref=d).  The trial court is free to believe or
disbelieve the testimony of the witnesses and the evidence presented.  Bradley v. State, 960 S.W.2d 791, 801
(Tex.App.--El Paso 1997, pet. ref=d).  An appellate court must review the record and
all reasonable inferences therein in the light most favorable to the trial
court=s
ruling.   Romero, 800 S.W.2d at 543; Bradley,
960 S.W.2d at 801.  We do not engage in
our own factual review but rather, we are charged with determining whether or
not the trial judge=s
findings of fact are supported by the record. 
Consaul, 960 S.W.2d at 686. 
If the findings are supported by the record, we will not disturb
them.  Id.  Our only consideration is whether the trial
court improperly applied the law to the facts. 
Romero, 800 S.W.2d at 543; Laca, 893 S.W.2d at 177.  If the lower court=s
decision is correct on any theory of law applicable to the case, it will be
sustained.  Romero, 800 S.W.2d at
543; Bradley, 960 S.W.2d at 801. 
This is true even if the trial court gives the incorrect reason for its
decision, especially when the decision concerns the admission of evidence.  Romero, 800 S.W.2d at 543; Dugard
v. State, 688 S.W.2d 524 (Tex.Crim.App. 1985).

Article
38.22








Because all of
Appellant=s issues
raised rely upon the application of Article 38.22 to this case, we must first
decide whether this case properly falls under the requirements of this
article.  Appellant argues his statement
is subject to the requirements of Article 38.22, sections 1 and 2.  This article of the Code of Criminal
Procedure governs when statements of an accused may be used.  Article 38.22 
provides:

Section
1.         In this article, a written
statement of an accused means a statement signed by the accused or a statement
made by the accused in his own handwriting or, if the accused is unable to
write, a statement bearing his mark, when the mark has been witnessed by a
person other than a peace officer.

 

Sec.
2.             No written statement made
by an accused as a result of custodial interrogation is admissible as evidence
against him in any criminal proceeding unless it is shown on the face of the
statement that:

(a)        the accused, prior to making the
statement, either received from a magistrate the warning provided in Article
15.17 of this code or received from the person to whom the statement is made a
warning that:

(1)        he has the right to remain silent and
not make any statement at all and that any statement he makes may be used against
him at his trial;

(2)        any statement he makes may be used as
evidence against him in court;

(3)        he has the right to have a lawyer
present to advise him prior to and during any questioning;

(4)        if he is unable to employ a lawyer, he
has the right to have a lawyer appointed to advise him prior to and during any
questioning; and

(5)        he has the right to terminate the
interview at any time; and

(b)        the accused, prior to and during the
making of the statement, knowingly, intelligently, and voluntarily waived the
rights set out in the warning prescribed by Subsection (a) of this section.

 

Tex.Code
Crim.Proc.Ann. art. 38.22, ''
1 & 2 (Vernon 1979).  The State
concedes that if Appellant=s
statement was taken while he was in custody, then Sections 1 and 2 would apply
in this instance.  However, the State
contends Article 38.22 does not apply to the statement given by Appellant
because it did not stem from custodial interrogation.  Section 5 of Article 38.22 expressly excludes
statements occurring outside of custodial interrogation.  Tex.Code
Crim.Proc.Ann. art. 38.22, '
5; Vessels v. State, 938 S.W.2d 485, 487 (Tex.App.--El Paso 1996, no
pet.).  This section provides:








Sec.
5. Nothing in this article precludes
the admission of a statement made by the accused in open court at his
trial, before a grand jury, or at an examining trial in compliance with Articles
16.03 and 16.04 of this code, or of a statement that is the res gestae of the
arrest or of the offense, or of a statement that does
not stem from custodial interrogation, or of a voluntary statement, whether
or not the result of custodial interrogation, that has a bearing upon the
credibility of the accused as a witness, or of any other statement that may be
admissible under law.  [Emphasis added].

 

Tex.Code
Crim.Proc.Ann. art. 38.22, '
5.  Thus the critical determination to be
made is whether Appellant was in custody at the time he made the statement.








A person is
considered to be Ain
custody@ only if
a reasonable person in the same position would believe that his freedom of
movement was restrained to the degree associated with a formal arrest.  Stansbury v. California, 511 U.S. 318,
322-24, 114 S.Ct. 1526, 1528-30, 128 L.Ed.2d 293, 298-99 (1994); Dowthitt v.
State, 931 S.W.2d 244, 254 (Tex.Crim.App. 1996); Bradley, 960 S.W.2d
at 801.  The reasonable person standard
is premised upon an innocent person.  Florida
v. Bostick, 501 U.S. 429, 438, 111 S.Ct. 2382, 2388, 115 L.Ed.2d 389
(1991); Dowthitt, 931 S.W.2d at 254; Consaul, 960 S.W.2d at
686.  The United States Supreme Court has
clearly held that the determination of custody is based entirely on objective
circumstances.  Stansbury, 511
U.S. at 322-23, 114 S.Ct. at 1528-29. 
The questioning of a suspect at a stationhouse does not, in and of
itself, constitute custody.  California
v. Beheler, 463 U.S. 1121, 1124-25, 103 S.Ct. 3517, 3519-20, 77 L.Ed.2d
1275 (1983); Oregon v. Mathiason, 429 U.S. 492, 495, 97 S.Ct. 711,
713-14, 50 L.Ed.2d 714 (1977); Dowthitt, 931 S.W.2d at 255; Consaul,
960 S.W.2d at 686.  When a person is
transported to a law enforcement facility by an officer in the course of an
investigation, if the person was acting upon the invitation, request, or even
the urging of law enforcement and there were no threats that they would be
taken in a forcible manner, and the accompaniment is voluntary and consensual,
then the individual is not in custody.  Anderson
v. State, 932 S.W.2d 502, 505 (Tex.Crim.App. 1996); Shiflet v. State,
732 S.W.2d 622, 629 (Tex.Crim.App. 1985); Consaul, 960 S.W.2d at
686.  However, it is possible for
questioning to begin as a noncustodial encounter and later escalate into a
custodial interrogation.  Ussery v.
State, 651 S.W.2d 767, 770 (Tex.Crim.App. 1983); State v. Rodriguez,
986 S.W.2d 326, 329 (Tex.App.--El Paso 1999, pet. ref=d).

Texas courts have
recognized four general situations which may constitute custody:  (1) when the suspect is physically deprived
of his freedom of action in any significant way; (2) when a law enforcement
officer tells the suspect that he cannot leave; (3) when law enforcement
officers create a situation that would lead a reasonable person to believe that
his freedom of movement has been significantly restricted; and (4) when there
is probable cause to arrest and law enforcement officers do not tell the
suspect that he is free to leave.  Shiflet,
732 S.W.2d at 629; Rodriguez, 986 S.W.2d at 329.  With regard to the first three situations, Stansbury
indicates the restriction upon freedom of movement must be equivalent with that
associated with an arrest as opposed to an investigative detention.  Dowthitt, 931 S.W.2d at 255; Rodriguez,
986 S.W.2d at 329; See Stansbury, 511 U.S. at 322-23, 114 S.Ct.
at 1528-29.  In cases involving the
fourth situation, Stansbury dictates the officers=
knowledge of probable cause be manifested to the suspect.  Stansbury, 511 U.S. at 325, 114 S.Ct.
at 1530; Dowthitt, 931 S.W.2d at 255; Rodriguez, 986 S.W.2d at
329.  This could occur if information
substantiating probable cause is related by the officers to the suspect or by
the suspect to the officers.  Stansbury,
511 U.S. at 325, 114 S.Ct. at 1530; Dowthitt, 931 S.W.2d at 255; Rodriguez,
986 S.W.2d at 329.








In this case, the
Sheriff=s
deputies did not deprive Appellant of his freedom of action in any significant
way.  Beheler, 463 U.S. at
1124-25, 103 S.Ct. at 3519-20; Mathiason, 429 U.S. at 495, 97 S.Ct. at
713-14; Shiflet, 732 S.W.2d at 629. 
Appellant was not handcuffed, searched, or fingerprinted.  Compare Dancy v. State, 728 S.W.2d
772, 777 (Tex.Crim.App. 1987); Bradley, 960 S.W.2d at 802; Vessels,
938 S.W.2d at 488.  He was not arrested
nor placed in a holding cell prior to or during his statement.  Compare Vessels, 938 S.W.2d at
488.  Further, he never asked to leave
and was not told he could not do so.  Compare
Dowthitt, 931 S.W.2d at 256; Rodriguez, 986 S.W.2d at 328.  Both deputies testified Appellant was free to
leave at anytime prior to his arrest.  Compare
Parra v. State, 743 S.W.2d 281, 285 (Tex.App.--San Antonio 1987, pet. ref=d). 
In fact, he voluntarily agreed to accompany the deputies to the annex
for questioning and signed documents indicating he was aware he could terminate
the interview at any time.  Compare
Shiflet, 732 S.W.2d at 631; Bradley, 960 S.W.2d at 793-96.  By the State=s
own admission at the suppression hearing, the deputies lacked probable cause to
arrest Appellant at the time he gave his statement.  Though the deputies may have told Appellant
that he was a suspect, there was no exchange of information prior to the
statement that justified a finding of probable cause.  Rodriguez, 986 S.W.2d at 330.  In light of these facts, the only possible
question is whether Deputies Baeza and Hernandez created a situation that would
lead a reasonable person in Appellant=s
position to believe his freedom of movement was significantly restricted.  Shiflet, 732 S.W.2d at 629.








As previously
noted, Appellant was not physically restrained in any fashion.  The length of the interview was notably
short.[3]  See Nenno v. State, 970 S.W.2d
549, 557 (Tex.Crim.App. 1998) (noting that a one hour interview is a short time
period); Dancy v. State, 728 S.W.2d at 778-79 (finding appellant not in
custody during a thirty-eight minute interrogation); Rodriguez, 986
S.W.2d at 330 (finding appellant not in custody though the interrogation lasted
several hours); Bradley, 960 S.W.2d at 794-95 (where a noncustodial
interrogation lasted approximately six hours). 
During this time, Appellant was not deprived of the ability to use the
restroom, speak to his family, eat, drink, smoke, or sleep.[4]  Compare Dowthitt, 931 S.W.2d at
256-57; Rodriguez, 986 S.W.2d at 330; Bradley, 960 S.W.2d at
794-95.  In fact, Appellant made no such
requests prior to or during his voluntary statement.  He was notified of his rights orally and in
writing and indicated in each instance that he understood the warnings.  Compare Bradley, 960 S.W.2d at
795-96.  During the suppression hearing,
Appellant acknowledged that he was not under arrest at the time the warnings
were given and he made his statement.[5]  His interaction with the sheriff=s office was, at most, more akin to an
investigative detention than an arrest.  Stansbury,
511 U.S. at 322-23, 114 S.Ct. at 1528-29; Dowthitt, 931 S.W.2d at 255; Rodriguez,
986 S.W.2d at 329.  In light of these
factors, we cannot conclude Appellant was in custody at the time he gave his
statement.








We find Appellant
was not in custody when he gave his statement to the Presidio County Sheriff=s Department.  His statement was not a product of custodial
interrogation and was given freely and voluntarily.  As such, Article 38.22 does not prohibit the
admission of the statement at trial.  Tex.Code Crim.Proc.Ann. art. 38.22, ' 5; Dowthitt, 931 S.W.2d at
254.  The lower court properly denied the
motion to suppress on this basis.  Because
all of Appellant=s issues
on appeal are incorrectly premised on the application of Article 38.22 to this
case, we find no need to review the issues individually.  Appellant=s
issues on appeal are overruled.  The
judgment of the trial court is affirmed.

 

 

 

August
29, 2002

DAVID WELLINGTON
CHEW, Justice

 

Before Panel No. 1

Larsen, McClure, and Chew, JJ.

 

(Do Not Publish)











[1]
The record indicates the deputies considered Appellant a suspect before they
arrived at his house and asked him to accompany them to the County Annex.  However, it is unclear whether the deputies
ever actually used the term Asuspect@ when speaking to Appellant.





[2]
In Appellant=s Reply
Brief, Appellant additionally argues the trial court=s
oral findings of fact vary from the written findings of fact.  He contends the oral findings should control
and that the oral findings consisted of a misapplication of the law.  Because we conclude the trial court=s written order is proper and correctly
applies Texas law to this case, it does not matter whether the reasons stated
orally by the judge are incorrect.  See
Romero, 800 S.W.2d at 543 (noting that if the trial court=s decision is correct on any applicable
legal theory it will be sustained).  This
issue is therefore overruled.





[3]
The record indicates the warnings were given at 2:20 a.m., the interview and
voluntary statement began at 2:30 a.m. and was completed by 3:15 a.m.  





[4]
Appellant does not claim to have been deprived of sleep, but he did testify he
was sleepy during the interview process.





[5]
Later in the hearing, Appellant seemingly changed his story, testifying he
thought he might have been under arrest at an earlier stage in the
investigation.  However, even if taken as
true, Appellant=s
subjective view on this is not controlling. 
See Stansbury, 511 U.S. at 322-23, 114 S.Ct. at 1528-29; Dowthitt,
931 S.W.2d at 254.  Further, the trial
judge was free to believe or disbelieve this testimony.   See Romero, 800 S.W.2d at 543; Bradley,
960 S.W.2d at 801.