Suzanne SLIVA, Appellant,

v.

The STATE of Texas, Appellee.

No. 08–94–00272–CR.

Court of Appeals of Texas,
El Paso.

Dec. 19, 1996.

Jerry Dean Kelly, Dallas, for appellant.

Thomas S. O'Connell, Criminal District Attorney, McKinney, for appellee.

Before LARSEN, McCLURE and CHEW, JJ.

### OPINION

LARSEN, Justice.

Suzanne Sliva appeals from her conviction for driving while intoxicated. The jury assessed punishment at thirty days confinement and a fine of $500 which was probated for twenty-four months. We affirm.

### SUMMARY OF THE EVIDENCE

At trial, Michael Hubbard testified that at approximately 1:30 a.m. on September 27, 1992, he and his wife were stopped at a red light at the intersection of Main Street and Highway 5 in Allen, Texas. They were going in an easterly direction on Main Street and they were preparing to turn onto Highway 5. They saw a car traveling at a high rate of speed coming down a hill from the other direction. The driver of the vehicle slammed on the brakes to avoid a collision with a pick-up truck. The vehicle proceeded north on Highway 5. After the light changed, Hubbard turned onto Highway 5. He saw the other vehicle make an "unannounced" turn to the left from the outside right lane. The car collided with a southbound vehicle. Hubbard stopped his car and approached the driver of the car he observed driving erratically—appellant was driving the car. He smelled alcohol on her breath and he testified that she was intoxicated.

James Touchy testified that he was the emergency room physician who treated appellant for injuries to her head and to the left-hand side of her chest. Touchy smelled alcohol on appellant's breath and he considered her to be clinically intoxicated. His notes indicated that she was released in the care of her husband at 3:45 in the morning.

Scott White, a police officer for the City of Allen, stated that on September 27, 1992, he was dispatched to an accident. He examined appellant's vehicle and noticed a strong odor of alcohol in the car. He approached appellant and asked if she had driven the vehicle and if anyone else was in the car. She stated that she was driving and no one else was in the car. White observed appellant being transported to the hospital. He followed the ambulance to the hospital in order to investigate a driving while intoxicated allegation. At the hospital, White read appellant her Miranda warnings and the statutory driving while intoxicated warnings. At the end of the interview, appellant asked to speak to an attorney and White terminated the interview. White stated that he would not have let appellant leave during the course of the interview although there is no indication in the record that he informed appellant of this.

John Whitehead testified that on September 27, 1992, he was a paramedic for the City of Allen Fire Department. He came in contact with appellant at the scene of the accident. He immobilized appellant by placing a "C-collar" on her and by placing her on a backboard. Whitehead stated that appellant smelled of an alcoholic beverage. In response to his question to appellant if she had been drinking, she responded that she had consumed five "White Russians." The witness stated that this question was asked for medical reasons because injuries can be hidden or masked when an individual is in an intoxicated state. He testified that he did not know if appellant was to be charged with a criminal offense and it was not a matter of concern to him. Appellant inquired whether or not she was going to jail and Whitehead stated that he thought there was a "50/50 chance."

Brent Woods stated that he also was a paramedic for the City of Allen Fire Department. He was the driver of the ambulance that transported appellant to the hospital. Woods smelled alcohol on appellant's breath and gave the opinion that she was intoxicated. He testified that appellant was extremely worried about being charged with driving while intoxicated. She asked both Woods and Whitehead if she was going to be arrested. Woods testified that he also stated to her there was a "50/50 chance"—that she either "would or she won't."

Elizabeth Ann Wigzell related that she was a detective with the City of Allen Police Department. She contacted appellant on October 6, 1992 to see if she wanted to give a statement regarding the incident. Wigzell stated that it was appellant's choice whether or not she wanted to give a statement. Appellant agreed to come in the next morning at 11:30. She failed to appear as her husband needed back surgery and arrangements were made for appellant to come to the police station on October 8 at 11:30 a.m. She came to the police station at that time. Wigzell testified that appellant was free to leave the police station at any time and she did leave the station after she gave her statement. She explained to appellant that she was not under arrest and she then read the Miranda warnings to appellant and made sure she understood the warnings. Wigzell requested that appellant give her side of the story. Appellant wrote out a statement. She never invoked her right for an attorney although Wigzell knew that she had requested an attorney during the interview at the hospital with Scott White. Wigzell stated that appellant was under no obligation to give a statement.

Appellant's statement was read to the jury. It read:

For a week and a half my husband and I had been arguing. Then a week ago Sunday we were still at it and I decided to leave and cool off. I came up 2170 from Lucas, turned right north on Highway 5 then decided to turn west into WalMart parking lot. I looked and saw a vehicle at a distance. I thought I had enough time to turn in front of her and make it across. As I proceeded to turn, there she was and I hit her. The evening started around

10:00 p.m. and this was 1:00 am. And I had *started* on the second beer for that entire day and evening. [Emphasis in original].

Appellant testified in her own behalf. She denied being intoxicated at the time of the accident. She did not remember any of the conversations with the paramedics. Appellant did not specifically remember any conversation with a police officer at the hospital. She did not remember any of the conversations with Detective Wigzell concerning her giving a statement at the police station. Appellant related that she drank one and one-half "White Russians" at a restaurant quite some time prior to the accident. On cross-examination, the following exchange occurred concerning the giving of her statement:

STATE: But you lied to her. Why would you lie to her?

APPELLANT: Beer and White Russian is an alcoholic beverage. I'm sorry. I didn't think it was very relevant as to what drink I had. Beer was an easier word to write. It's shorter. That's why the statement is so short to begin with.

STATE: Why?

APPELLANT: I—then so—I didn't want to write. So I put down as little as possible because I put down what was necessary for the statement.

STATE: How do you know you didn't want to write?

APPELLANT: Because I never want to write.

STATE: You contacted the officer to come in and make a voluntary statement and you didn't want to write?

APPELLANT: I didn't know I had to write. I didn't have to write when I made the statements about my husband beating me up and pulling a gun on me. *I thought all I had to do was tell her* and she would write.

STATE: So when you called her up you were expecting to go in and tell your side of the story?

APPELLANT: Yes. *That's what I was told to do.* Tell her my side of the story. That's what I was told to do.

. . .

STATE: And that was your complete side of the story looks like; correct?

APPELLANT: *That's what I had to write.* [Emphasis added.]

## DISCUSSION

In Points of Error One and Two, appellant asserts the court erred in failing to enter written findings concerning the voluntariness of appellant's statement and further failed to hold a hearing outside the presence of the jury to determine the voluntariness of the statement. On May 9, 1996, this court abated this cause and remanded it to the trial court to conduct a hearing on the voluntariness of appellant's statement and to make the appropriate written findings. This hearing was held on June 19, 1996 and a transcription of this hearing and the written findings concerning the voluntariness of the statement were filed with this court. Accordingly, Points of Error One and Two are overruled.

In Point of Error Three, appellant contends that the court erred in failing to instruct the jury on the issue of the voluntariness of appellant's statement. Prior to the submission of the charge to the jury, appellant requested that a charge be submitted to the jury pursuant to TEX.CODE CRIM.PROC. ANN. art. 38.22, § 6 (Vernon 1979). Appellant made the following request:

And I would ask that a charge be submitted to the jury under Section 38.22 Section 6. And under that I would ask that instruction be had that any evidence pertaining to any matter of voluntariness may be—well, when—it shall be submitted to the jury and that you instruct the jury

unless they believe beyond a reasonable doubt that the statement was voluntarily made the jury shall not consider such statement for any purpose nor any evidence obtained as a result thereof. And I would ask that this instruction be included as part of the instructions in the charge.

The court denied this request.

TEX.CODE CRIM.PROC.ANN. art. 38.22, § 2 (Vernon 1979) provides that no written statement made by an accused as a result of custodial interrogation is admissible against him unless it is shown on the face of the instrument that the accused either received from a magistrate the warning provided in article 15.17 of the Code of Criminal Procedure or he received from the person to whom the statement is made the warnings commonly called the Miranda warnings.

Section 5 of this article states, in relevant part, that nothing in this article precludes the admission of a statement that does not stem from custodial interrogation. Section 6 of article 38.22 provides, in pertinent part, that where a question is raised regarding the voluntariness of a statement of an accused, the court must make an independent finding in the absence of the jury whether or not the statement was made under voluntary conditions. Upon such a finding, evidence pertaining to the voluntariness of the statement may be submitted to the jury and it shall be instructed that unless the jury finds beyond a reasonable doubt that the statement was voluntarily made, the jury shall not consider the statement for any purpose nor any evidence obtained as a result thereof.

Section 7 provides that "When the issue is raised by the evidence, the trial judge shall appropriately instruct the jury, generally, on the law pertaining to such statement."

 To raise an issue regarding the voluntariness of a confession means that some evidence must be presented to the jury that the confession was not given voluntarily. *Hernandez v. State*, 819 S.W.2d 806, 812 (Tex.Crim.App.1991). If there is no evidence raising the issue, an accused is not entitled to a jury charge on the matter. *Id.* However, the procedural safeguards of article 38.22 apply only to statements that stem from custodial interrogation. *Morris v. State*, 897 S.W.2d 528, 531 (Tex.App.—El Paso 1995, no pet.); TEX.CODE CRIM.PROC.ANN. art. 38.22, § 5 (Vernon 1979). Therefore, the point at which custody attached, if it did, is determinative of our resolution of these contentions. A person is considered in "custody" only if a reasonable person would believe that his or her freedom of movement was restrained to the degree associated with a formal arrest. *Stansbury v. California*, 511 U.S. 318, 322–25, 114 S.Ct. 1526, 1528–30, 128 L.Ed.2d 293, 298–99 (1994); *Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex.Crim.App.1996). The reasonable person standard presupposes an innocent person. *Id.* The subjective intent of law enforcement officials to arrest is not relevant unless that intent is communicated or otherwise manifested to the suspect. *Stansbury*, 511 U.S. at 326, 114 S.Ct. at 1530, 128 L.Ed.2d at 300; *Dowthitt*, 931 S.W.2d at 254.

Formerly, the following four factors were utilized to determine custody:

(1) Probable cause to arrest;

(2) Subjective intent of the police;

(3) Focus of the investigation; and

(4) Subjective belief of the defendant.

 *Meek v. State*, 790 S.W.2d 618, 621–22 (Tex.Crim.App.1990). Under the *Stansbury* decision, factors two and four are irrelevant except to the extent that they are manifested in the words or actions of law enforcement officials. The determination of custody is based entirely upon objective circumstances. *Stansbury*, 511 U.S. at 322–23, 114 S.Ct. at 1528–29, 128 L.Ed.2d at 298; *Dowthitt*, 931 S.W.2d at 254. This determination is made on an ad hoc basis, after consideration of all the objective circumstances. *Id.* at 255. Station house questioning does not, by itself, constitute custody. *Id.* However, the fact that an interrogation begins as noncustodial does not prevent custody from arising later; the conduct of the police during the encounter may cause a consensual inquiry to escalate into custodial interrogation. *Id., Ussery v. State*, 651 S.W.2d 767, 770 (Tex.Crim.App.1983).

There are four general situations which may constitute custody: (1) when the suspect is physically deprived of his or her freedom in any significant way; (2) when a law enforcement official tells the suspect that he or she cannot leave; (3) when law enforcement officials create a situation that would lead a reasonable person to believe there has been a significant restriction upon his or her freedom of movement; and (4) when there is probable cause to arrest and law enforcement officers do not tell the suspect that he or she is free to leave. *Shiflet v. State*, 732 S.W.2d 622, 629 (Tex.Crim.App.1985). Regarding the first three situations, the restriction upon freedom of movement has to amount to the degree associated with an arrest as opposed to an investigative detention. *Dowthitt*, 931 S.W.2d at 255. Regarding the fourth situation, the officers' knowledge of probable cause must be manifested to the suspect. *Dowthitt*, 931 S.W.2d at 255. This manifestation could occur if some information substantiating probable cause is related by the officers to the suspect or by the suspect to the officers. Further, as probable cause is a "factor" in other cases, the fourth situation does not automatically establish custody. Custody is established if the manifestation of probable cause, combined with other circumstances, would lead a reasonable person to believe that he or she is under restraint to the degree associated with an arrest. *Id.*

Appellant maintains that her testimony that, "That's what I was told to do," "I thought all I had to do was tell her . . ." and "That's what I had to write" raised the issue of the voluntariness of the statement. She also contends Detective Wigzell's knowledge that appellant invoked her right to counsel at the hospital raised the issue of voluntariness under article 38.22 requiring an instruction to the jury. While an examination of the testimony mentioned in the first contention reveals that appellant referred to being told to give her side of the story, we do not reach that contention or the second assertion because we find that neither during the interview at the hospital nor during the interview at the police station was appellant in custody—an initial requirement for the applicability of article 38.22.

The appellant was never told she was under arrest. In both instances, she left after the interview and was never told that she could not do so. She was never physically restrained and the existence of probable cause was never communicated to her. Objectively, under these circumstances, we find that appellant was not in custody and the trial court was not required to give a jury instruction under the provisions of article 38.22. Point of Error Three is overruled.

In Point of Error Four, appellant asserts that the state utilized improper jury argument. During argument at the guilt-innocence stage of trial, the following exchange occurred:

STATE: Poor reaction time. Loss of judgment because of five White Russians and at least one more beer if not another partial beer. That's what she told the paramedics. That's what she told you in her statement.

DEFENSE: Your Honor, he's making statements outside the evidence in this case. He's adding things that were never said in this case. I ask that he be instructed not to do that.

THE COURT: Objection overruled. Request denied.

Proper jury argument falls into four specific categories: (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) answer to argument by opposing counsel; and (4) plea for law enforcement. *Alejandro v. State*, 493 S.W.2d 230, 231 (Tex.Crim.App.1973). Wide latitude is given to counsel in drawing inferences from the evidence provided the inferences are reasonable, fair, legitimate, and offered in good faith. *Denison v. State*, 651 S.W.2d 754, 761–62 (Tex.Crim.App.1983).

In this case, there was no direct evidence that appellant consumed both the White Russians and the beer. However, we find that given the wide latitude allowed in argument, it was a reasonable deduction from the evidence to argue that appellant consumed both

varieties of drink. Appellant's explanation for using the term "beer" instead of "White Russian" could appear somewhat strained to the jury and the prosecutor, given the distinct difference between the two types of beverage. We find it was within the bounds of proper argument for the prosecutor to urge his deduction that appellant had consumed both. Point of Error Four is overruled.

In Points of Error Five and Six, appellant contends that the court erred in failing to conduct hearings outside the presence of the jury regarding the testimony of the two paramedics—John Whitehead and Brent Woods. Whitehead testified he detected the odor of an alcoholic beverage from appellant's breath. His questions concerning her level of intoxication were posed for the purpose of medical treatment. Whitehead stated that he was unaware of any prosecution for driving while intoxicated and was unaware of such a prosecution until five days after the accident.

Woods drove the ambulance that transported appellant to the hospital. He testified that appellant was very worried about being arrested for driving while intoxicated and he as well as Whitehead ventured the opinion that there was a 50/50 chance or she "would or she won't."

In light of the prior discussion, we find that the actions of the paramedics did not constitute custodial interrogation. While the comments made in response to appellant's inquiries concerning her possible arrest might be construed as giving her some indication of probable cause, at no time did the actions or word of the paramedics arise to the level of an arrest situation. Points of Error Five and Six are overruled.

### CONCLUSION

The judgment of the trial court is affirmed.