The STATE of Texas, Appellant,

v.

Miguel RODRIGUEZ, Appellee.

No. 08–97–00589–CR.

Court of Appeals of Texas,
El Paso.

Jan. 14, 1999.

Rehearing Overruled Feb. 10, 1999.

Jaime E. Esparza, Dist. Atty., Tom A. Darnold, Asst. Dist. Atty., El Paso, for State.

Manuel J. Barraza, Matthew DeKoatz, El Paso, for Appellee.

Before BARAJAS, C.J., and LARSEN and McCLURE, JJ.

## *OPINION*

SUSAN LARSEN, Justice.

This is a State's appeal from the trial court's order suppressing appellee Miguel Rodriguez's written statement. We reverse the trial court's order.

## *BACKGROUND*

Rodriguez was arrested and indicted for the offense of indecency with a child after making a written statement to Detective Miguel Zamora of the El Paso Police Department's child abuse and exploitation unit. Rodriguez filed a motion to suppress the written statement and, after hearing, the trial court entered an order granting suppression. The State appeals with two issues for our consideration.

## *FACTS*

Detective Zamora was the only witness at the hearing to recount Rodriguez's statement and the events leading up to it. While Zamo-

ra was attending a staff meeting on May 15, 1997, his supervisor asked him to assist another investigator by interviewing Rodriguez and taking a statement if Rodriguez wished to give one. Zamora had not previously worked on the case. Although he knew that an investigation had already focused on Rodriguez, Zamora did not know whether Rodriguez would be arrested at the time he began the interview. Zamora met Rodriguez, who had agreed to come to the station voluntarily, in the lobby and asked Rodriguez to come into his office [1] and sit down in one of the chairs. Rodriguez was not under arrest or handcuffed and Zamora did not have his weapon displayed.

Before he began interviewing Rodriguez, Zamora reviewed the offense report for the case, but he did not read it aloud or review it with Rodriguez. Zamora conducted the entire interview in Spanish, including reading Rodriguez his *Miranda* [2] rights from a card printed with the *Miranda* warnings in Spanish. After reading Rodriguez his rights, Zamora reviewed an additional police report, and a statement Rodriguez had already given to officials at the school where the incident occurred. The content of these documents is not in the record of the suppression hearing. Having read the additional documents, Zamora advised Rodriguez that the school had made a report alleging a criminal offense. He explained that the offense was aggravated sexual assault and further delineated the elements of aggravated assault to Rodriguez. Zamora told Rodriguez that another investigator had already interviewed the victim and that he (Zamora) wanted to hear Rodriguez's side of the story if Rodriguez wanted to tell it. After Rodriguez confirmed that he wanted to make a written statement, Zamora typed the statement into a computer as Rodriguez talked. The whole process took "several hours" because, as Zamora explained, "it was a long statement and I'm also a slow typist." Rodriguez never asked to leave and he was never denied any basic necessity such as food, drink, or use of the restroom.

In summary, Rodriguez's statement [3] relates that the victim entered a bathroom stall as Rodriguez, a janitor at the school, was cleaning it. The victim started touching Rodriguez and asking for money. When she kissed Rodriguez on the mouth, he became aroused and touched the victim's breasts and genitals. As Rodriguez began to masturbate, a coach came into the bathroom and took the victim away.

When Rodriguez finished giving his statement, Zamora called his supervisor, explained to her what Rodriguez had said, and received authorization to arrest Rodriguez on the spot and without obtaining a warrant. Zamora testified, however, that Rodriguez had been free to leave until the point Zamora formally arrested him, which was only after Rodriguez had completed his statement.

## WAS RODRIGUEZ IN CUSTODY?

With its first issue, the State contends the trial court erred in finding that Rodriguez was in custody at the time he gave his statement. Rodriguez maintains that his written statement failed to contain on its face the warnings listed in Article 38.22, section 2 of the Texas Code of Criminal Procedure.[4] Before the procedural safeguards found in Article 38.22, section 2 apply, however, the written statement must be the result of custodial interrogation.[5]

## APPLICABLE LAW

A person is considered in "custody" only if a reasonable person would believe that his or her freedom of movement was restrained to the degree associated with a

---

1. Zamora's office is approximately ten by ten feet. It contains a desk and several chairs. It is air-conditioned.

2. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

3. The original statement signed and initialed by Rodriguez is in Spanish. An English translation is in the record as State's Exhibit 3.

4. *See* Tex.Code Crim. Proc. Ann. art. 38.22, § 2 (Vernon 1979).

5. Tex.Code Crim. Proc. Ann. art. 38.22, § 5 (Vernon 1979); *Sliva v. State*, 936 S.W.2d 721, 725 (Tex. App.—El Paso 1996, no pet.).

formal arrest.[6] The reasonable person standard presupposes an innocent person.[7] The subjective intent of law enforcement officials to arrest is not relevant unless that intent is communicated or otherwise manifested to the suspect.[8] Formerly, the following four factors were utilized to determine custody: (1) probable cause to arrest, (2) subjective intent of the police, (3) focus of the investigation, and (4) subjective belief of the defendant.[9] This law was altered by the U.S. Supreme Court in *Stansbury v. California*.[10] Under the *Stansbury* decision, factors two and four are irrelevant except to the extent that they are manifested in the words or actions of law enforcement officials. The determination of custody is based entirely upon objective circumstances.[11] This determination is made on an ad hoc basis, after consideration of all the objective circumstances.[12]

 Station house questioning, as in this case, does not by itself constitute custody.[13] However, the fact that an interrogation begins as noncustodial does not prevent custody from arising later; the conduct of the police during the encounter may cause a consensual inquiry to escalate into custodial interrogation.[14] There are four general situations which may constitute custody:

(1) when the suspect is physically deprived of his or her freedom in any significant way;

(2) when a law enforcement official tells the suspect that he or she cannot leave;

(3) when law enforcement officials create a situation that would lead a reasonable person to believe there has been a significant restriction upon his or her freedom of movement; and

(4) when there is probable cause to arrest and law enforcement officers do not tell the suspect that he or she is free to leave.[15]

Regarding the fourth situation, which is most at issue in this case, the officers' knowledge of probable cause must be manifested to the suspect.[16] This manifestation could occur if some information substantiating probable cause is related by the officers to the suspect or by the suspect to the officers. Further, as probable cause is a "factor" in other cases, the fourth situation does not automatically establish custody. Custody is established if the manifestation of probable cause, combined with other circumstances, would lead a reasonable person to believe that he or she is under restraint to the degree associated with an arrest.[17]

### STANDARD OF REVIEW

 The trial court has broad discretion in determining the admissibility of evidence, and we should not reverse absent a clear abuse of discretion.[18] On a motion to suppress evidence, the trial judge is the sole and exclusive trier of fact and judge of credibility of witnesses, including the weight to be given their testimony.[19] We do not engage

**6.** *Stansbury v. California*, 511 U.S. 318, 322–24, 114 S.Ct. 1526, 1528–30, 128 L.Ed.2d 293, 298–99 (1994); *Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex.Crim.App.1996).

**7.** *Dowthitt*, 931 S.W.2d at 254.

**8.** *Stansbury*, 511 U.S. at 325–26, 114 S.Ct. at 1530, 128 L.Ed.2d at 300; *Dowthitt*, 931 S.W.2d at 254.

**9.** *Meek v. State*, 790 S.W.2d 618, 621–22 (Tex.Crim.App.1990).

**10.** *Stansbury v. California*, 511 U.S. 318, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994).

**11.** *Stansbury*, 511 U.S. at 322–23, 114 S.Ct. at 1528–29, 128 L.Ed.2d at 298; *Dowthitt*, 931 S.W.2d at 254.

**12.** *Dowthitt*, 931 S.W.2d at 255.

**13.** *Id.*

**14.** *Id.; Ussery v. State*, 651 S.W.2d 767, 770 (Tex.Crim.App.1983).

**15.** *Shiflet v. State*, 732 S.W.2d 622, 629 (Tex.Crim.App.1985).

**16.** *Id.*

**17.** *Id.*

**18.** *Allridge v. State*, 850 S.W.2d 471, 492 (Tex.Crim.App.1991), *cert. denied*, 510 U.S. 831, 114 S.Ct. 101, 126 L.Ed.2d 68 (1993).

**19.** *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App.1990); *Cannon v. State*, 691 S.W.2d 664 (Tex.Crim.App.1985), *cert. denied*, 474 U.S. 1110, 106 S.Ct. 897, 88 L.Ed.2d 931 (1986); *Laca v. State*, 893 S.W.2d 171, 177 (Tex.App.—El

in our own factual review but merely decide whether or not the trial judge's findings of fact are supported by the record. In a case such as this, however, where the facts relied upon by the State are uncontroverted, their sufficiency is a question of law for the court.[20] If the trial court's findings are supported by the record, we are not at liberty to disturb them.[21] If, however, the application of law to fact does not turn on an evaluation of credibility and demeanor, the appellate court may review the trial court's decision *de novo*.[22] In this case, Zamora's version of the facts is undisputed and the case does not turn on an evaluation of credibility. We therefore review the application of the law to the undisputed facts *de novo*.

## APPLICATION OF THE LAW
## TO THE FACTS

Although Zamora clearly understood that Rodriguez was the target of the investigation and certainly obtained information sufficient to develop probable cause to arrest Rodriguez at some point during Rodriguez's statement, there is no evidence that Zamora's knowledge and subjective intent were ever manifested to Rodriguez. The mere receipt of information sufficient to constitute probable cause during the taking of a statement, in and of itself, does not elevate an encounter into a custodial interrogation.[23] Rather, the manifestation of probable cause, combined with other circumstances, is sufficient if it would lead a reasonable person to believe that he or she is under restraint to the degree associated with an arrest.[24] For example in *Dowthitt*, the Court of Criminal Appeals noted the length of the interrogation (about fifteen hours), the existence of factors involving the exercise of police control over appellant (accompanying appellant at restroom breaks, ignoring requests to see his

wife), as well as the appellant's damaging admission establishing probable cause to arrest, to determine that "custody" began after the appellant admitted to his presence during the offense.[25] We find no such additional factors present in the case before us. Zamora's interrogation of Rodriguez lasted only "several" hours, and consisted mostly of Zamora "typing as he's (Rodriguez) talking." Zamora testified that Rodriguez was free to go up until Zamora placed him under arrest after taking his statement. There is no evidence of any indication to the contrary. Rodriguez was never denied any food, drink, or access to the restroom, nor did he ever ask to leave or to go anywhere. Accordingly, we find that although probable cause to arrest Rodriguez developed at some point during his statement, probable cause was never manifested to Rodriguez in any form sufficient to lead a reasonable person to believe that he or she is under restraint to the degree associated with an arrest. We therefore find that Rodriguez was not in custody, and we sustain the State's first issue.

## CONCLUSION

Having sustained the States's first issue, we reverse the trial court's order suppressing Rodriguez's written statement and remand the case for further proceedings not inconsistent with this opinion. Since our disposition of the State's first issue requires remand, it is unnecessary for us to address the State's second issue.

Paso 1995, pet. ref'd); *Lee v. State*, 893 S.W.2d 80, 84 (Tex.App.—El Paso 1994, no pet.); *Chavarria v. State*, 876 S.W.2d 388, 391 (Tex.App.—El Paso 1994, no pet.).

**20.** *Rose v. State*, 470 S.W.2d 198, 200 (Tex.Crim. App.1971); *Fields v. State*, 932 S.W.2d 97, 105 (Tex.App.—Tyler 1996, pet. ref'd).

**21.** *Romero*, 800 S.W.2d at 543; *Laca*, 893 S.W.2d at 177; *Lee*, 893 S.W.2d at 84.

**22.** *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim.App.1997).

**23.** *Shiflet*, 732 S.W.2d at 629.

**24.** *Id.*

**25.** *See Dowthitt*, 931 S.W.2d at 256–57.