Affirmed and Opinion filed July 19, 2005









Affirmed and Opinion filed July 19, 2005.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-04-00191-CR

____________

 

ROXANE E. MARTINEZ, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from County
Criminal Court at Law No. 12

Harris County, Texas

Trial Court Cause No. 1194496

 



 

O P I N I O N








A jury found appellant guilty of Class B
misdemeanor theft.  The trial court
sentenced appellant to confinement in the Harris County Jail for ninety days,
suspended the sentence and placed her on community supervision for one year,
and assessed a fine of $2,000.00.  On
appeal, appellant raises five issues, arguing: 
(1) the trial court erred in charging the jury on the lesser included
offense of Class B misdemeanor theft; (2) the trial court erred in denying
appellant=s motion to suppress her oral statements;
(3) appellant=s oral statements were admitted in
violation of her right to remain silent as guaranteed by the Fifth and
Fourteenth Amendments to the United States Constitution; (4) appellant=s oral statements
were admitted in violation of her right to remain silent as guaranteed by
article I, section 10 of the Texas Constitution; and (5) the evidence is
factually insufficient.  We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On the evening of June 26, 2003, appellant
went to a local bar, Palmer=s Ice House,  where she played several games of pool with a
man named Mario.  Ydalia Capetillo, the
complainant, asked appellant if she could play pool with them, and appellant
said yes.  Capetillo then placed money on
the table to play the next game. 
Capetillo subsequently went to the restroom, and, when she returned,
appellant and Mario had begun another game of pool without her.  Capetillo and appellant argued over Capetillo
being excluded from the game of pool.

Around 2:00 a.m., the bar closed.  Appellant walked out of the bar with Mario
and Cassandra Vega, an acquaintance of appellant=s.[1]  Vega had come to the bar that evening with
her brother, Omar Vega, and friends Julie Butanda and Melissa Gonzales.  According to Vega, appellant was hugging Mario
by his truck in the parking lot when Capetillo, who had also left the bar,
approached them in the parking lot. 
Appellant and Capetillo began to argue, and their verbal argument
escalated into a physical altercation.

During the altercation, Capetillo=s purse and its
contents fell to the ground.  According
to some witnesses, appellant hit Capetillo during the altercation.  The testimony also is conflicting as to
whether appellant grabbed Capetillo=s purse and placed
it in her car, or whether appellant was handed Capetillo=s purse, along
with other items that belonged to appellant, and she placed the purse and other
items in her car.  The conflicting
testimony on this issue is set forth below.








          Capetillo testified she saw appellant
put Capetillo=s purse in appellant=s car.  According to Capetillo, her purse, valued at
$16.00, contained a cell phone, valued at $280.00, a wallet, valued at $56.00,
and approximately $1,000.00 in cash.    

Alejandra Ortaga, a waitress at the bar,
saw appellant and Capetillo grabbing each other outside in the parking lot that
evening.  Ortaga testified she picked up
the purse=s contents that were strewn about the
parking lot and placed them back into the purse.  According to Ortaga, appellant fought with
her over the purse and eventually grabbed the purse and tossed it into the back
seat of her car.

Maria Flores, a waitress at the bar who
also witnessed the altercation between appellant and Capetillo in the parking
lot, testified she saw appellant place Capetillo=s purse in her
car.

Martin Rojas, a disc jockey at the bar,
saw both women arguing in the parking lot, and he  saw appellant take the purse from Ortaga, get
in her car, and drive away.

 George Gutierrez, a patron of the bar that
night, saw appellant and Capetillo exchange words by the pool table inside the
bar over whose game it was and also saw them both arguing in the parking
lot.  Gutierrez saw Ortaga and appellant
pulling on the purse, like a tug-of-war.

Vega testified appellant threw a wallet, a
purse, and a pool cue stick in the trunk of appellant=s car, and she
remembered Omar and Butanda handing appellant something.  Vega did not see appellant and Capetillo
struggle over the purse or hit each other.

Butanda testified she witnessed the
altercation between appellant and Capetillo in the parking lot.  Butanda stated she retrieved the wallet in
the parking lot and handed it to appellant, believing it belonged to appellant.  Appellant then, without looking at it, threw
it in her trunk.








It is undisputed appellant drove away from
the bar with Capetillo=s purse and its contents in her car. 

Officer Larry Vasqez responded to the
disturbance call at the bar that evening. 
He interviewed Capetillo, Rojas, Flores, and Alejandra Alvarado when he
arrived.  Capetillo told Vasqez she was
struck on the face and body by appellant, and he observed both Capetillo and
Flores appeared to have been in a physical altercation.

Suzanne Gonzales, appellant=s cousin who was
living with appellant at the time, testified she and appellant discovered a
wallet, the same one identified at trial as belonging to Capetillo, on the
front seat of appellant=s car after having the car detailed one
Saturday.  Appellant thought the wallet
belonged to Gonzales, but Gonzales told her it was not hers.  When they arrived home, they took the wallet
inside the house.  Gonzales opened it up
and found approximately $200.00 in cash, some photos, and various
identification and business cards.  After
looking through the wallet, the various cards were placed in the drawer of a
china cabinet, the wallet was left on the dining room table, and the cash was
placed in a petty cash drawer in appellant=s bedroom.  The wallet was eventually turned over to
authorities, but Gonzales does not know what happened to the cards or the cash.

On September 15, 2003, Officer Jared Davis
visited appellant, an associate judge at the time, at her chambers in the
municipal courthouse.  A bailiff let him
in to see her.  Davis identified himself
to appellant.  He told her she was a
named suspect in a theft, and he was there to get her side of the story.  Davis did not have a warrant and did not read
her Miranda warnings; however, he did tell her she did not have
to talk to him.  Appellant told Davis the
following: 








[Appellant] had
gotten into a verbal argument with one of the ladies that was in a bar called
Palmer=s Ice House on the
night of June 26th, 2003, and that following the argument that had taken place
inside the bar, [appellant] and [Capetillo] had then walked outside of the bar
where they got into a physical confrontation. 
[Appellant] then told [Davis] that somewhere during that process, a
purse, [Capetillo=s] purse, had been placed - - put into
[appellant=s] vehicle, which [appellant] later
discovered the following day. 

Appellant also told Davis she believed the purse was
somewhere inside her home.  She told him
the purse had been placed in her car and that it belonged to Capetillo.  Appellant told him there was approximately
$200.00 cash in the purse along with some change, but she did not know where
the cell phone was.  She also told him
she had spent the money.  She explained
that during the altercation with Capetillo her bracelet was torn off and her
knee was injured, and appellant felt that, given her injuries and the damage to
her bracelet, there was nothing wrong with spending the money.  Appellant told Davis she would try to locate
the purse and meet him with it the next day. 

Two days later, Davis returned a voice
mail message appellant had left for him the day before.  Davis taped their entire telephone
conversation.  The tape recorded
conversation was admitted into evidence and published to the jury.  During their telephone conversation,
appellant repeated to Davis some of what she had told him during their meeting
two days earlier.  Appellant tells Davis
she has the wallet and purse, but she cannot find the cell phone or business
cards.  Appellant reiterates there was
only $200.00 cash in the purse along with some change.  Appellant also tells Davis Omar put Capetillo=s wallet and purse
in her car.  Appellant asks Davis about
what the other witnesses are saying appellant did, and Davis tells appellant
the witnesses are saying appellant hit them. 
Appellant denies hitting anyone and reiterates that she did not
intentionally take anything.  She admits
knowing the purse and wallet belonged to Capetillo and spending the money.  Appellant asks Davis about possibly paying
the money back, and Davis tells her the complainant is the one who would make
the decision as to whether or not to press charges against appellant and the
decision is not up to the police department or the prosecutor.  At the end of their conversation, appellant
tells Davis she brought the purse to work. 
Davis asks if he may call her later and come by to get the purse;
appellant tells him that is Aokay@ and to give her a
call.  








Later that same day, appellant was
arrested pursuant to an arrest warrant. 
She turned over Capetillo=s wallet.[2]  Appellant was charged with Class A
misdemeanor theft of property valued over $500 and under $1500 and
assault.  Appellant pled not guilty. 

During trial, over appellant=s objections, her
oral and tape-recorded conversations with Davis were admitted into
evidence.  The jury charge included
instructions on Class A misdemeanor theft and on the lesser included offense of
Class B misdemeanor theft, theft of property valued at $50 or more but less
than $500.  The jury ultimately found
appellant guilty of the lesser included Class B theft offense.[3]


DISCUSSION

I.        Lesser
Included Offense

In issue one, appellant argues the trial court erred in
charging the jury on the lesser included offense of Class B misdemeanor theft
because the instruction does not meet the second prong of the test established in
Rousseau v. State, 855 S.W.2d 666, 672 (Tex. Crim. App. 1993).  Appellant contends no evidence existed for
the jury to find appellant guilty only of theft of property in an amount less
than $500.00. 








To determine whether a defendant is
entitled to a lesser included offense instruction, a two-prong test applies:
(1) the lesser included offense must be included within the proof necessary to
establish the offense charged; and (2) some evidence must exist in the record
that would permit a jury rationally to find that if the defendant is guilty,
she is guilty only of the lesser included offense.[4]  Id. at 672B73.  Appellant concedes the first prong of the
test has been met, that Class B misdemeanor theft is a lesser included offense
of Class A misdemeanor theft.  However,
appellant argues the second prong of the Rousseau test has not been met
because no evidence of the lesser offense of Class B misdemeanor theft existed
for the jury to find appellant guilty only of theft of property in an
amount less than $500.  Thus, appellant
contends the trial court erred in instructing the jury on Class B misdemeanor
theft over her objection.

A person commits the offense of theft if
she unlawfully appropriates property with intent to deprive the owner of that
property.  Tex. Pen. Code Ann. ' 31.03(a) (Vernon
Supp. 2005).   The grade of the theft
offense and the applicable punishment depend upon the value of the property
stolen.  Price v. State, 308
S.W.2d 47, 48 (Tex. Crim. App. 1957). 
Theft of property with a value of $500 or more but less than $1500 is a
Class A misdemeanor, and theft of property with a value of $50 or more but less
than $500 is a Class B misdemeanor.  Tex. Pen. Code Ann. '
31.03(e)(2)(A)(i), (e)(3).  

Here, the complaint charged appellant with
theft of Capetillo=s cash money, purse, and cell phone,
valued over $500.00 and under $1,500.00, a Class A misdemeanor.[5]  The following jury charge instruction was
submitted on the lesser included offense of Class B misdemeanor theft:








[I]f you believe
from the evidence beyond a reasonable doubt that the defendant is guilty of
theft but you further believe beyond a reasonable doubt that the value of the
property is $50 or more but less than $500, you must give the benefit of such
doubt to the defendant and find that the value of the  property is $50 or more but less than $500,
and you will so state in your verdict . . . .

The only physical evidence introduced at
trial was Capetillo=s wallet, valued at $56.00.  Capetillo=s cash, cell
phone, and purse were never recovered. 
Despite appellant not having been charged with theft of the wallet,
appellant on appeal argues the value of the wallet should be included in the total
value of the property stolen.  Appellant
cites Warren v. State, 810 S.W.2d 202, 203B04 (Tex. Crim.
App. 1991) as authority for the proposition that when prosecuting theft
of items in the conjunctive, the State must prove the appropriation and value
of each item.  Appellant is correct;
however, here, appellant was not charged with theft of the wallet.  Thus, the value of the wallet may not
be included in determining the value of the property stolen.  See Lehman v. State, 792 S.W.2d 82, 84
(Tex. Crim. App. 1990) (declaring a theft conviction can never rest in whole or
in part upon theft of property not alleged in the indictment as stolen).

As to the value of the three items alleged
in the complaint to have been stolen, the purse, cash, and cell phone, there is
conflicting testimony in the record as to the amount of cash in Capetillo=s purse at the
time it was stolen.  The evidence showed
that somewhere between approximately $200.00 and $1,000.00 in cash was in
Capetillo=s wallet at the time it was taken.  Capetillo testified $1000.00 in cash was in
her purse when it was stolen.  In
contrast, Davis testified appellant told him the amount of cash in the purse
was approximately $200.00.  Gonzales also
testified the amount of cash was around $200.00.  As to the value of the other two items, the
purse and the cell phone, Capetillo testified she bought the purse for $16.00,
and the value of the cell phone was $280.00. 








If the jury believed Capetillo=s testimony and
valued the cash at $1,000.00, a rational jury could find the total value of the
purse, cell phone, and the cash together was $1296.00.  However, if the jury instead believed Davis= and/or Gonzales= testimony and
valued the cash at $200.00, the cash, cell phone, and purse together total
$496.00.  A $1296.00 value constitutes a
Class A misdemeanor, and a $496.00 value constitutes a Class B
misdemeanor.  See Thomason v. State,
892 S.W.2d 8, 10B11 (Tex. Crim. App. 1994).  Thus, because there is some evidence in the
record which, if believed, would show that appellant is guilty only of the
lesser included offense of Class B misdemeanor theft, we conclude the trial
court did not err in including the instruction on the lesser included offense
in the jury charge.

Accordingly, we overrule appellant=s first issue.

II.       Admission
of Oral Statements

In issues two, three, and four, appellant
argues the admission of her oral and recorded statements, both taken by Davis,
violated her right to remain silent as guaranteed by the Fifth and Fourteenth
Amendments to the United States Constitution and article I, section 10 of the
Texas State Constitution.  U.S. Const. amends. V, IV; Tex. Const. art. 1, ' 10.  Appellant argues she should have been read
her Miranda rights because Davis= questioning of
her was custodial.  See Miranda v.
Arizona, 384 U.S. 436, 444 (1966).

At a suppression hearing, the trial judge
is the sole finder of facts.  Arnold
v. State, 873 S.W.2d 27, 34 (Tex. Crim. App. 1993); Hill v. State,
902 S.W.2d 57, 59 (Tex. App.CHouston [1st
Dist.] 1995, pet. ref=d). 
The trial judge is free to believe or disbelieve any or all of the
evidence presented.  Romero v. State,
800 S.W.2d 539, 543 (Tex. Crim. App. 1990). 
On appeal, mixed questions of law and fact that do not turn on an
evaluation of credibility and demeanor are reviewed de novo.  Guzman v. State, 955 S.W.2d 85, 89
(Tex. Crim. App. 1997).  Here, both sides
agree on the basic facts surrounding the custody question.    








During the motion to suppress hearing,
Davis testified he contacted appellant at her place of work on September 15,
2003 and asked to see her.  At the time,
appellant was a municipal court judge, and the bailiff invited Davis into
appellant=s chambers.  Davis told appellant she was a suspect in a
theft and he wanted to get her side of the story.  Appellant then told Davis that on June 26,
2003 she had a verbal disagreement with Capetillo inside Palmer=s Ice House and
later got into a physical altercation with Capetillo outside in the parking lot
of the bar.  Appellant told him a purse
had ended up in her car, and, after examining its contents, she knew the purse
belonged to Capetillo.  She further
stated there was a couple hundred dollars and loose change inside the purse
which she spent.  At the end of their
conversation, Davis told appellant to call him if she found the purse.  He left her place of work without arresting
appellant.

Two days later, Davis called and spoke to
appellant over the telephone; appellant had left him a voice mail message the
day before.  Davis taped their phone
conversation, unbeknownst to appellant. 
The substance of the telephone conversation was essentially what they
had discussed in her chambers two days earlier. 
Appellant was arrested later that day. 

For Miranda rights to be necessary,
a police interrogation must be custodial. 
384 U.S. at 444.  In order for an
interrogation to be custodial, the questions must be asked after the suspect
has been taken into custody or otherwise deprived of freedom of action in a
significant way.  Id.         

First, appellant argues her freedom of
movement was denied because she was not told she was free to leave.  Second, appellant argues that after she
admitted knowing who owned the wallet and spending the money, there was
probable cause to arrest her, and her Miranda rights should have been
read to her at that time.  See
Dowthitt v. State, 931 S.W.2d 244, 255 (Tex. Crim. App. 1996) (stating
Texas courts recognize four general situations which may constitute
custody:  (1) when the suspect is
physically deprived of his freedom of action in any significant way;  (2) when a law enforcement officer tells the
suspect he cannot leave; (3) when law enforcement officials create a situation
that would lead a reasonable person to believe that his freedom of movement has
been significantly restricted; and (4) when there is probable cause to
arrest and law enforcement officers do not tell the suspect he is free to leave).









With regard to appellant=s contention that
she was denied freedom of movement, we conclude appellant=s freedom of
movement in both situations, at her office and on the telephone, was not
impaired in any way.  The record shows
Davis= first questioning
took place inside appellant=s own office.  Davis told her he was there to get her side
of the story.  She told him what
happened, and Davis left her office without arresting her.  Davis= second
questioning took place over the telephone two days later, and appellant again
discussed with Davis what had happened. 
Davis asked appellant if he could come by later and pick up the wallet,
and she said okay.  This evidence does
not show appellant was deprived of freedom of action in a significant way.








We next address appellant=s contention that
she was in custody because there was probable cause to arrest her and Davis did
not tell her she was free to leave.  For
the purpose of Miranda warnings, the initial determination of custody
depends on the objective circumstances of the interrogation, not on the
subjective views held by either the investigator or the person being
questioned.  Stansbury v. California,
511 U.S. 318, 323 (1994).  While an
investigator=s beliefs may bear upon the custody issue
if the beliefs are conveyed, those beliefs are only relevant as to how a
reasonable person in the position of the individual being questioned would
gauge her Afreedom of action.@[6]  Id. at 325.   For custody to arise in the scenario where
there is probable cause to arrest and law enforcement officers do not tell the
suspect she is free to leave, not only must there be probable cause to arrest,
but the police must manifest the information to the suspect, so that a
reasonable person would believe he or she is under restraint to the degree
associated with an arrest.  State v.
Rodriguez, 986 S.W.2d 326, 330 (Tex. App.CEl Paso 1999, pet.
ref=d).  Thus, probable cause is a factor to consider
under this scenario, but it does not automatically establish custody.  Id.; see also Dowthitt, 931
S.W.2d at 255.  The determination of
custody is to be made on an ad hoc basis, after considering all of the
objective circumstances.  Dowthitt,
931 S.W.2d at 255.

Here, Davis approached appellant, an
associate municipal court judge at the time, at her place of employment, and
they discussed the facts of the case in her chambers.   He told her she was a suspect and he wanted
to get her side of the story.  Appellant
told him her side of the story; she admitted knowing the purse was Capetillo=s and spending the
money inside the purse.  At the close of
the discussion in appellant=s chambers,
appellant told Davis she would get in touch with him about the purse=s
whereabouts.  Two days later, Davis and
appellant spoke over the telephone when Davis returned appellant=s phone call.  Appellant again admitted to spending the
money she had found in Capetillo=s purse. 

There is no evidence in the record that
shows appellant believed her freedom of movement was impaired to the extent of
a formal arrest.  Additionally, probable
cause to arrest appellant never was manifested to appellant in any form
sufficient to lead a reasonable person to believe that he or she is under
arrest or under restraint to the degree associated with an arrest.  See Rodriguez, 986 S.W.2d at 330.  Considering all of the objective
circumstances, we conclude appellant was not in custody when Davis questioned
appellant in her chambers on September 15, 2003 or when appellant spoke to
Davis on the telephone two days later on September 17, 2003.  Because appellant was not in custody on
either occasion, Miranda warnings were unnecessary.  

Accordingly, we overrule appellant=s second, third,
and fourth issues.








III.      Factual
Sufficiency

In her fifth and final issue, appellant
argues the evidence is factually insufficient to sustain the jury verdict
finding her guilty of theft.  Appellant
asserts the disputed issue at trial was whether appellant knowingly took
Capetillo=s purse intending to deprive her of the
purse and its contents.  Appellant
contends the evidence shows the purse was among other property handed to
appellant just prior to her getting in her car and leaving, and this evidence
supported appellant=s defense that she did not knowingly take
Capetillo=s purse and did not unlawfully appropriate
the property.  

When an appeals court conducts a factual
sufficiency review, the court views all evidence Awithout the prism
of >in the light most
favorable to the prosecution.=@  Zuniga v. State, 144 S.W.3d 477, 482
(Tex. Crim. App. 2004) (quoting Stone v. State, 823 S.W.2d 375 (Tex.
App.CAustin 1992, pet.
ref=d, untimely
filed)).  There is only one question to
be answered:  AConsidering all of
the evidence in a neutral light, was a jury rationally justified in finding
guilt beyond a reasonable doubt?@  Id. at 484.  There are two ways in which the evidence may
be insufficient.  First, when considered
by itself, evidence supporting the verdict may be too weak to support the
finding of guilt beyond a reasonable doubt. 
Second, where there is evidence both supporting and contrary to the
verdict, the contrary evidence may be strong enough that the
beyond-a-reasonable-doubt standard could not have been met.  Id. at 484B85.

The jury found appellant guilty of Class B
misdemeanor theft.  A person commits
Class B misdemeanor theft if she unlawfully appropriates property valued at $50
or more, but less than $500, with intent to deprive the owner of the property.  Tex.
Pen. Code Ann. ' 31.03(a), (e)(2)(A)(i); see Thomason
v. State, 892 S.W.2d 8, 10B11(Tex. Crim. App.
1994).








It is undisputed appellant drove away with
Capetillo=s purse and its contents in her car.  However, some witnesses testified appellant took
the purse and put it in her car, and other witnesses testified appellant was
handed the purse and put it in her car. 
The following witnesses testified appellant took the purse:  (1) Capetillo testified she saw appellant put
her purse in her car; (2) Ortaga testified appellant fought with her over the
purse, grabbed the purse from her, and tossed it into the back seat of her car;
(3) Flores testified she saw appellant place the purse in her car; (4) Martin
Rojas saw appellant take the purse from Ortaga, get in her car, and drive away;
(5) Gutierrez saw Ortaga and appellant pulling on the purse, like a tug-of-war;
and (6) Davis testified appellant admitted she knew the purse belonged to
Capetillo, and she felt justified in spending the money.  In contrast, three witnesses testified
appellant was handed the purse or was unaware the purse was in her
car.  Vega testified appellant threw a
wallet, a purse, and a pool cue stick in the trunk of her car, and she
remembered her brother Omar and Butanda handing appellant these items.  Butanda testified she picked up the wallet in
the parking lot and handed it to appellant, thinking it belonged to
appellant.  Gonzales testified appellant
did not know who the wallet belonged to when it was discovered in appellant=s car until after
they examined its contents.

The jury is the finder of fact, and it is
not the appellate court=s role to Afind@ facts or
substitute its judgment for that of the jury. 
Zuniga, 144 S.W.3d  at
482.  What weight to give conflicting
testimony is within the sole province of the jury, because it turns on an
evaluation of credibility and demeanor.  Cain
v. State, 958 S.W.2d 404, 408B09 (Tex. Crim.
App. 1997).  AA decision is not
manifestly unjust merely because the jury resolved conflicting views of the
evidence in favor of the State.@  Id. at 410.  The jury was free to believe or disbelieve
the witnesses as they chose.  Id.

After considering the evidence in a
neutral light, we conclude the evidence supporting the verdict is not too weak
to support the finding of guilt beyond a reasonable doubt, and the evidence
contrary to the verdict is not so strong that the beyond a reasonable doubt
standard could not have been met.  Zuniga,
144 S.W.3d at 484B85. 
Accordingly, we hold the evidence is factually sufficient to support
appellant=s conviction for Class B misdemeanor
theft.  

We overrule appellant=s fifth issue.

 








CONCLUSION

The judgment of the trial court is
affirmed.

 

 

/s/      John S. Anderson

Justice

 

Judgment
rendered and Opinion filed July 19, 2005.

Panel
consists of Justices Yates, Anderson, and Hudson.

Publish
C Tex. R. App. P. 47.2(b).

 











[1]  Vega testified
no officers escorted her and appellant out of the bar that evening.  However, Officer Noe Hernandez, who worked
security at the bar that evening, testified he walked appellant out to the
parking lot.  According to Hernandez, appellant
had told him she was having problems with a female inside the bar, and
appellant asked him to escort her out to the parking lot at the end of his
shift.  Hernandez testified he and
another officer escorted appellant out of the bar to her car that night.  However, Hernandez did not witness the
altercation in the parking lot that evening. 





[2]  Nothing other
than the wallet was ever recovered.  The
wallet was admitted as an exhibit during trial.





[3]  The jury found
appellant not guilty of assault.  





[4]  The State
asserts on appeal the Rousseau two-prong test is applicable only to
defense requested lesser included offense instructions and is not applicable to
State requested lesser included offense instructions.  The Texas Court of Criminal Appeals has held
both prongs of the Rousseau test are applicable to the State=s request for a lesser included offense instruction,
and we are bound by this precedent.  Arevalo
v. State, 943 S.W.2d 887, 890 (Tex. Crim. App. 1997). 





[5]  The complaint
and information allege appellant Aon or
about June 26, 2003, did then and there unlawfully appropriate, by acquiring
and otherwise exercising control over property, namely, CASH MONEY, A PURSE,
AND A CELL PHONE, owned by YDALIA CAPETILLO, hereafter styled the Complainant,
of the value of over five hundred dollars and under one thousand five hundred
dollars, with the intent to deprive the Complainant of the property.@  The probable
cause section of the complaint valued the items taken at $1000.00 in cash, a
$280.00 cell phone, and a $20.00 purse. 
Class A misdemeanor theft involves 
property valued at five hundred dollars or more.  Tex.
Pen. Code Ann. ' 31.03(e)(3). 
The State established a higher burden for itself by charging appellant
with theft of over five hundred dollars. 
Warren v. State, 810 S.W.2d 202, 204 (Tex. Crim. App. 1991) (en
banc).  





[6]  In Stansbury,
the United States Supreme Court discussed the effect an officer=s statement to an individual that she was a suspect
has on the custody issue:

An officer=s
knowledge or beliefs may bear upon the custody issue if they are conveyed, by
word or deed, to the individual being questioned. Those beliefs are relevant
only to the extent they would affect how a reasonable person in the position of
the individual being questioned would gauge the breadth of his or her Afreedom of action.@  Even a clear statement from an officer that
the person under interrogation is a prime suspect is not, in itself,
dispositive of the custody issue, for some suspects are free to come and go
until the police decide to make an arrest. 
The weight and pertinence of any communications regarding the officer=s degree of suspicion will depend upon the facts and
circumstances of the particular case.  In
sum, an officer=s views concerning the nature of an interrogation, or
beliefs concerning the potential culpability of the individual being questioned,
may be one among many factors that bear upon the assessment whether that
individual was in custody, but only if the officer=s views or beliefs were somehow manifested to the
individual under interrogation and would have affected how a reasonable person
in that position would perceive his or her freedom to leave.

511 U.S. at
325 (citations omitted).