

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | | |
|---|---|---|---|
| THE STATE OF TEXAS, | § | No. 08-23-00077-CR | |
| Appellant, | § | Appeal from the | |
| v. | § | 120th Judicial District Court | |
| DANIEL GONZALEZ, | § | of El Paso County, Texas | |
| Appellee. | § | (TC# 20220D04717) | |

## MEMORANDUM OPINION

During interrogation by detectives, Appellee Daniel Gonzalez confessed to sexual assault. He moved to suppress the statements and confessions made after he stated that he would get an attorney to protect himself. The trial court granted his motion, and the State filed this appeal, raising two main arguments: (1) Gonzalez did not invoke his right to counsel, and (2) the right to counsel did not attach because he did not undergo a custodial interrogation. The parties fiercely dispute the first point, but Gonzalez offers no substantive response to the second issue, other than to ask this Court to review the record for ourselves. We have, and we conclude that the State is correct that the record cannot support a finding that Gonzalez was in custody (as that term is understood in right to counsel cases). For that reason only, we reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

The El Paso County Sheriff's Department received a report that Gonzalez had sexually abused his daughter, Z.D.G., multiple times when she was between the ages of 12 and 18. Z.D.G. alleged that Gonzalez had installed security cameras and may have recorded the assaults. James Nance, the investigating detective, obtained a search warrant for the residence and while executing it, spoke with Gonzalez by phone. Gonzalez went to the residence and then agreed to meet the detectives at the station for questioning. Gonzalez drove himself to the station.

Gonzalez's interview was video-recorded and was made part of the record for our review. Before asking Gonzalez any questions, the detectives read him his rights. Relevant to this appeal, they informed him that he had the right to remain silent and not make any statement at all, to have an attorney present, and to terminate the interview. Gonzalez confirmed that he understood his rights and agreed to speak to the detectives.

Gonzalez told the detectives that Z.D.G. had a history of making sexual abuse reports to CPS and that they had all been dismissed. He denied the current allegations of assault. About 45 minutes into the interview, Nance asked Gonzalez if he would agree to take a polygraph test. Gonzalez responded, "If I get to that point, I'm gonna have to get a lawyer because I need to protect myself for whatever comes after this." Nance then urged him to take the test if he had nothing to hide. Gonzalez says, "At this point . . . this is going too far that no matter what, I . . . going to get a lawyer. I'm going to press charges too." Following this exchange, Nance said that he had no further questions. He reminded Gonzalez that he is not under arrest, told him that he will walk him out to his car, and asked him to have his attorney call him. But Gonzalez continued to discuss getting an attorney and taking legal action against Z.D.G., and the interview continued. Less than an hour later, Gonzalez confessed to sexually assaulting Z.D.G.

Gonzalez moved to suppress the statements and confessions made during the interrogation. At the suppression hearing, Gonzalez argued that he invoked his right to an attorney and any statement that followed must be suppressed. The State responded that when he was questioned, Gonzalez was not under arrest, voluntarily gave statements, and only mentioned an attorney as a condition of taking a polygraph test. The trial court granted the motion, finding that Gonzalez's "inartful, confusing but repeated request for a lawyer to protect himself was a sufficient, unequivocal invocation of his right to counsel." The trial court issued detailed findings of fact on whether Gonzalez unequivocally invoked his desire for counsel and at what point in the interview he did so. No finding addresses whether he was in custody.

The State appeals, arguing that Gonzalez did not invoke his right to an attorney, and that even if he did, the detectives did not violate his rights by continuing to question him because he was not in custody.

## MOTION TO SUPPRESS

### A. Standard of review

We review suppression rulings under a bifurcated standard. *Sims v. State*, 569 S.W.3d 634, 640 (Tex. Crim. App. 2019). When there are findings of fact, we afford them "almost total deference if they are reasonably supported by the record." *Id*. When there are no findings, "we assume that the court made implicit findings that support its ruling, provided that those implied findings are supported by the record." *Ex Parte Moore*, 395 S.W.3d 152, 158 (Tex. Crim. App. 2013). Questions of law and the application of the law to the facts are reviewed *de novo*. *Sims*, 569 S.W.3d at 640.

**B. Custody is a threshold determination.**

The Supreme Court in *Miranda* held that the right against self-incrimination requires that an accused in custody be notified, before questioning, of the right to remain silent and to an attorney. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). The custody requirement grabs our attention here. "The need to scrupulously honor a defendant's invocation of *Miranda* rights does not arise until created by the pressures of *custodial* interrogation." *Estrada v. State*, 313 S.W.3d 274, 296 (Tex. Crim. App. 2010) (emphasis added); *see also Miranda*, 384 U.S. at 444 ("prosecution may not use statements . . . stemming from *custodial* interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination.") (emphasis added); Tex. Code Crim. Proc. Ann. art. 38.22, § 5 ("[n]othing . . . precludes the admission of a statement made by the accused . . . that does not stem from *custodial* interrogation") (emphasis added). An accused who is not in custody and continues to be questioned after invoking his rights can "simply [] get up and leave." *Estrada*, 313 S.W.3d at 296, n.26.

**C. What constitutes custody?**

Custody certainly includes a person who is under arrest, but it also includes these four other situations:

> (1) when the suspect is physically deprived of his freedom of action in any significant way, (2) when a law enforcement officer tells the suspect that he cannot leave, (3) when law enforcement officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted, and (4) when there is probable cause to arrest and law enforcement officers do not tell the suspect that he is free to leave.

*Dowthitt v. State*, 931 S.W.2d 244, 255 (Tex. Crim. App. 1996). In this case, the fourth factor does not apply. If the detectives had probable cause to arrest Gonzalez before confession, they "never manifested to [Gonzalez] in any form sufficient to lead a reasonable person to believe that he or

she is under restraint to the degree associated with an arrest." *State v. Rodriguez*, 986 S.W.2d 326, 330 (Tex. App.—El Paso 1999, pet. ref'd). The other three factors focus on the degree to which the accused is restrained.

An individual is in custody if he is under arrest or "reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest." *Dowthitt v. State*, 931 S.W.2d at 254 (citing *Stansbury v. California*, 511 U.S. 318, 322 (1994)). In other words, a person is in custody if "under the facts and circumstances of the case, a reasonable person would have felt that he or she was not at liberty to terminate the interrogation and leave." *Thai Ngoc Nguyen v. State*, 292 S.W.3d 671, 678 (Tex. Crim. App. 2009), (quoting *Miranda*, 384 U.S. at 532). Although custody is a case-specific determination, we look to several guideposts: "whether the suspect arrived at the place of interrogation voluntarily, the length of the interrogation, whether the suspect's requests to see relatives and friends are refused, and the degree of control exercised over the suspect." *Xu v. State*, 100 S.W.3d 408, 413 (Tex. App.—San Antonio 2002, pet. ref'd); *State v. Nelson*, No. 08-22-00174-CR, 2023 WL 4237770, at *4 (Tex. App.—El Paso June 28, 2023, no pet.) (not designated for publication) (referencing same factors). Other factors include "the amount of force displayed, the duration of a detention, the efficiency of the investigative process and whether it is conducted at the original location or the person is transported to another location, the officer's expressed intent—that is, whether he told the detained person that he was under arrest or was being detained only for a temporary investigation." *State v. Sheppard*, 271 S.W.3d 281, 291 (Tex. Crim. App. 2008); *Nelson*, 2023 WL 4237770, at *4.

**D. Was Gonzalez in custody?**

The State devotes seven pages of its brief on the law and facts here for whether Gonzalez was in custody. In his brief, Gonzalez expressly waives argument on the custody issue, and reminds

5

us that we are required to conduct an independent review of the record to decide the correctness of the State's argument. *See State v. Police*, 377 S.W.3d 33, 35 (Tex. App.—Waco 2012, no pet.) (noting that even in the absence of an appellee's brief, "[w]e must make an independent examination of the merits of the issues presented for review."); *State v. Smith*, No. 13-14-00413-CR, 2015 WL 1456188, at *1, n. 1 (Tex. App.—Corpus Christi–Edinburg Mar. 26, 2015, no pet.) (mem.op., not designated for publication) (same).

The court entered findings of fact and conclusions of law, but they do not address whether Gonzalez was in custody. We therefore review the record to determine whether it supports the implied finding that he was in custody.

Gonzalez was questioned at the station, yet that fact alone does not make it a custodial interrogation. *Estrada*, 313 S.W.3d at 294. Gonzalez voluntarily went to the station in his own vehicle. *See Rathbun v. State*, 96 S.W.3d 563, 566 (Tex. App.—Texarkana 2002, no pet.) (holding that interrogation was not custodial based on, among other factors, the fact that the accused drove his own vehicle to the police station). When they arrived at the station, Gonzalez was simply escorted to an office; he was not fingerprinted or searched. *See Dancy v. State*, 728 S.W.2d 772, 777 (Tex. Crim. App. 1987) (en banc) (noting the same facts in determining that defendant was not in custody). He was not asked to empty his pockets although he did so on his own as he was sitting down. Nor was he asked to turn over any personal belongings.[1] He asked to record the interview and had his cell phone by his side during the interview. The interrogation lasted less than 2 1/2 hours, including two breaks. *See Rodriguez*, 986 S.W. 2d at 330 (finding that defendant was not in custody when interrogation lasted "several hours"); *Ervin v. State*, 333 S.W.3d 187, 208

---

[1] One of the items that Gonzalez removed from his pockets before sitting down was a small screwdriver. That remained on the table during the first part of the interview. Before leaving the room during a break, the detective stated that he was taking the screwdriver and Gonzalez said, "That's fine."

(Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) (noting "the four hour period of time at the police station does not constitute a length of time that would cause a reasonable person to believe that she was in custody"). The detectives did not exhibit any force. Gonzalez was never handcuffed or told that he could not leave. *See Ervin*, 333 S.W.3d at 209 (finding that appellant was not in custody when she was not handcuffed or restricted in her movements). Gonzalez "was never denied any food, drink, or access to the restroom, nor did he ever ask to leave or to go anywhere." *Rodriguez*, 986 S.W.2d at 330. There is no indication from the video that the detectives displayed their firearms and Gonzalez never appears frightened. *See Wexler v. State*, 593 S.W.3d 772, 780 (Tex. App.—Houston [14th Dist.] 2019), aff'd, 625 S.W.3d 162 (Tex. Crim. App. 2021) ("There is no evidence in the record that the police used physical force to remove appellant from the house, handcuffed her at any time, threatened her, displayed a firearm, or even spoke to her in a hostile tone."). The detectives did not prevent Gonzalez from communicating with family or friends; in fact, he remained in possession of his phone and used it freely before the interrogation began and during breaks. *See Ervin*, 333 S.W.3d at 209 (considering access to relatives and friends when determining whether interrogation was custodial). Finally, and perhaps most importantly, Nance told Gonzalez that he was not under arrest. *See Allen v. State*, 479 S.W.3d 341, 349 (Tex. App.— El Paso 2015, no pet.) (holding that appellant was not in custody when he was told that he was not under arrest); *Oregon v. Mathiason*, 429 U.S. 492, 495, (1977) (same).

The record does not support the trial court's implied finding that Gonzalez was in custody. A reasonable person in Gonzalez's circumstances would understand that he was free to leave. Even if Gonzalez unequivocally invoked his right to an attorney, an issue we need not reach, detectives were not required to stop questioning him.

We hold that the trial court's order suppressing Gonzalez's statements was error.

7

## CONCLUSION

Because Gonzalez was not in custody and was free to terminate the interrogation, the trial court erred in suppressing his statements. We reverse the trial court's order.

JEFF ALLEY, Chief Justice

April 18, 2024

Before Alley, C.J., Palafox and Soto, JJ.

(Do Not Publish)